## GEORGE JONES AND NANCY JONES V. THE STATE.

In charging the jury the Judge may call their attention to the evidence of a particular fact or facts, if they be controverted, for the purpose of directing them to the rules of law that must govern them in arriving at the truth; and if they be uncontroverted, for the purpose of the application of the law to them. All that is required of the Judge is that he should neither decide on the facts nor attempt to influence the jury in their decision on the facts.

The proposition, that where the witnesses before the jury, are equal in credibility, the greater number must prevail, is unsound; because it fixes an arbitrary rule for the government of the jury in deciding on the weight of evidence when the witnesses have not been impeached, and have all, therefore, went before the jury, as equal. In such cases, the jury giving weight to testimony so conflicting, must determine which is entitled to the most influence; and this they may do from various considerations, such as the manner, expression, intelligence, and which is the most likely to be best informed from his situation and intelligence.

Bad character, limited to a want of chastity, does not render a witness infamous in the legal sense of the term. "How far the want of chastity would impair "her credit, was a question to which the jury had the right and sole right to "respond."

Where the Judge refused to charge the jury, that the confessions of a party accused of felony, should be received with very great caution, and that the jury should hesitate to convict upon such confession unless corroborated by other circumstances, the Court said : "The Judge could not be called upon to give this charge unless "the facts in the case made it applicable. * * * There is no doubt about the "life of the man being destroyed, and *prima facia*, it was a feloneous killing: "There was no evidence of surprize, fight, or inducement held out to make the "confession : such circumstances would have been proper to be considered by the "jury and if any of them had been in evidence, the refusal of the Court to give "the charge would have been error."

Where two or more persons are jointly indicted and put upon their trial together, and little or no evidence is offered against one or more of the defendants, and such defendants are willing to be tried on the evidence of the prosecution, the jury should be instructed to pass on their case, before the other defendant or defendants have opened their defence, so that they should not be deprived of the evidence of co-defendants who are not inculpated by the evidence of the State.

The drinking of ardent spirits (whiskey) of their own procurement, by the jury in a criminal case, after they have retired to consider of their verdict, vitiates their verdict, and is good cause for a new trial. *It seems* that the rule is the same in civil cases.

Where the jury separated while the Bailiff was conducting them through a crowd, but it did not appear that they had spoken to any one, it was held that the separation was not such as would vitiate their verdict.

Where one count in an indictment embraces two offences of different grades, a conviction of the inferior offence is an acquittal of the higher, and upon a new trial, the defendant cannot be tried and convicted of the higher offence.

Where the defendant was indicted for murder in the first degree, and convicted of murder in the second degree, and there was a new trial, it was held, that, upon the second trial, he could not be tried and convicted of murder in the first degree. As murder in the second degree can only be committed with malice, it admits of accessories before the fact.

Appeal from Madison.

*John Taylor*, for appellants. I. The Court erred in refusing to grant a new trial, and refusing to arrest the judgment. The verdict was contrary to law and evidence.

1st. The Court ought to have granted a new trial on the principle of newly discovered evidence. The defendants had not been able to avail themselves of the testimony of Kissiana Jones, because she was a co-defendant on the trial, and the Court had refused upon their application, upon the close of the evidence for the State, to refer the case to the jury, as to her, although there was no evidence against her. In that state of the case, it stood, upon the legal principle of newly discovered evidence; and it was material, for it proved an *alibi*.

2nd. The Court ought to have granted a new trial, because the verdict was the finding of a drunken jury. That is, the legal as well as natural inference from the fact established before the Court, by the regular showing, that their Bailiff had been almost incessantly employed by them in packing (as they say) whiskey, for them to drink, from the whiskey shop to their room, and which they were drinking, up to the very time when their verdict was recorded. They, then, characterized themselves as a drunken jury, while they were deliberating upon, and in the very act of finding this verdict. With such a fact judicially established before them, no Court is warranted by the laws of Texas, in sentencing an American citizen to be hung. In such a case, it is mere haphazard, whether the verdict is right or wrong. It is the most gross and infamous misconduct of which a jury could be guilty, in the exercise of their functions; and on either ground it is imperative on the Court to grant a new trial.

The use of spirituous liquors, or the separation of the jury, or any misbehavior, will vitiate the verdict of the jury. They are required by law to be kept without meat and drink, but more especially without intoxicating liquors. (Whar. Am. Crim. Law, 596, 597; McLean v. The State, and Jernigan v. The State, 10 Yerger, 241, 529; Moore v. The State, 5 Id. 55; Dennison v. Collins, 1 Cowan, 111; Rose v. Smith, 4 Id. 17.)

The rule is the same in criminal as in civil cases, especially as to the irregularity of the jury.   (Ib.)

In the above cases, where spirituous liquors had been used, the Court was satisfied that it had not been productive of any evil consequences, and yet they held it vitiated the verdict. (Whart. Am. Crim. Law, 904.)

II. The Court erred in charges given to the jury, and in refusing charges asked for by the defendants.

The first error in this respect, committed by the Court, was their refusing to refer the case, on the motion of the defendants, to the jury as to Kissiana Jones, after the evidence on the part of the State had closed.   This was error in the Court.

1st. Because there was no evidence to inculpate Kissiana Jones; but, on the contrary, the State in attempting to produce that, produced evidence to exculpate her.

2nd. The Court, in such a state of the case, had no discretion when such an application was made: it was not a matter of discretion with the Court; it was a matter of absolute right on the part of the defendants, to have the case referred to the jury as to her, and to have the benefit of her testimony.

A new trial could only be had as to murder in the second degree, of which the party stood convicted. (Whart. Am. Crim. L. 571, 572, 573, and the cases there cited.)

III. The Court erred in refusing to sustain the motion in arrest of judgment.

At the precedent trial, George Jones had been found guilty of murder in the second degree.   They obtained a new trial, and at the next Court were again put upon their trial, upon

the indictment as it originally stood, as if no such proceedings had ever been had.

Now, I contend that the legal effect of the verdict, at the Spring Term of the Court, was to acquit George Jones of murder in the first degree; he never could, after that, be again put upon trial, and subjected to a verdict and the finding of a jury, upon that or any other indictment, charging him with murder in the first degree, in killing Allen Jones, and that of course extinguished the whole ground of the charge against Nancy Jones, for that was merely incidental to the charge of murder in the first degree against George Jones; and if the one could not again be put in jeopardy neither could the other. The trying them, therefore, on the original charge the second time, and convicting them, was erroneous, and they could avail themselves of it in arrest of judgment; it was not necessary to plead it specially, for it appeared on the face of the record. My proposition is this, that on the second trial they were put in jeopardy a second time. (See Wharton's Am. Crim. Law, 196–199, 205–215.)

The first verdict was murder in the second degree. (See 1 Archibold's Crim. Law, 111, 112, in notes.)

That that was the legal effect of the verdict is clear, upon legal principle as well as authority. For the verdict by affirming his guilt, as to the inferior, was a negation or denial of his guilt as to the superior crime. If the act charged were the one, it could, not in its very nature be the other. It could not be either or both, indifferently, at the same time; and the jury, therefore, could not convict him of the guilt of the one without, at the same time, necessarily, exonerating him from the guilt of the other.

That being the legal effect of the verdict, the moment it was recorded, the new trial afterwards granted, could not alter the case, for two reasons:

1st. With regard to George Jones, the new trial referred technically to the offence of which he had been convicted, murder in the second degree, and with regard to Nancy Jones, it

was altogether nugatory, and could have no legal effect, in any way whatever, for under the previous proceedings she had been finally and totally discharged: I mean, according to their legal effect. And

2nd. The new trial being a subsequent proceeding, and the parties having already stood exonerated by the effect of the previous proceeding, no act of the Court could then, in that respect, change the state of the case, either with or without the consent of the parties. Neither by any act of the Court, nor even by their own act, could they be put in jeopardy, a second time for the same thing. And except as to the charge of murder in the second degree against George Jones, the indictment was dead, it was *functus officio;* and Nancy Jones could not be legally arraigned with him; there could be no accessories before the fact to the crime of murder in the second degree. The judgment, therefore, ought to have been arrested, and upon that ground I ask a final judgment for their discharge.

*J. G. McDonald,* also, for appellant. I. The Court erred in refusing to grant a new trial.

1st. The jury having this case under charge, indulged in drinking spirituous liquors. In People v. Douglass, 4 Cowan, R. 26, the Court said that, "The mere fact of drinking of spirituous liquors is enough to set aside the verdict." In the above case it was very doubtful whether the two jurors drank, yet the Court granted a new trial.

2nd. The jury separated while they had the charge against the accused under consideration, and unattended by an officer of Court, mingled with other persons. (*Vide* 11 Humph. R.; 1 Swan, R. 256; 3 Tex. R. 35; 8 Humph. R. 597; 8 Smead & Marsh. R. 587.)

In case of separation, the *onus* is on the State to show there was no tampering with the jury. (Hines v. The State, 8 Humph. R.; 10 Yerg. R. 241.)

II. The Court erred in excluding evidence on the trial which

ought to have been received. In refusing to permit the case to go to the jury as to Kisiana Jones, so that the accused might have availed themselves of the benefit of her evidence. (3 Barbour's R. S. C. (N. Y.) 17 ; 4 Coms. R. 546.)

*Attorney General,* for appellee. The first four grounds assumed in the motion for a new trial, 1st. That the verdict was contrary to law ; 2nd. Contrary to evidence ; 3rd. To the charge of the Court ; 4th. That the Court erred in its refusal to give instructions asked ; have been disposed of. The 5th and 14th, that the Court erred in refusing to discharge Kisiana Jones, or to submit her case separately to the jury for an acquittal, that she might be a witness for her co-defendants, may be considered together ; and also the 6th, " the materialty of Kisiana's evidence."

Upon the first two of the grounds here thrown together the following extract from Whart. Am. Crim. Law (2nd Ed. p. 918,) is decisive against the appellants. " When the indict-" ment includes several defendants, one of them cannot regu-" larly become a witness for the others ; but if no evidence " whatever be given against him, he is entitled to his dis-" charge, and may be examined in behalf of the other defend-" ants. Where there is any, even the least, evidence against " him, he cannot be sworn, but the whole must be submitted " to the jury together." But here, where the Judges are forbidden to interfere with the province of the jury in any way, as by compelling a non-suit or by summing up and charging upon the facts, the course tolerated in England by the authorities, as shewn by Mr. Wharton, could not be allowed. The fact that her testimony has now been rendered competent by her acquittal, affords no ground for a new trial to her late co-defendants. (Whart. Am. Crim. Law. 916.)

The 7th, 8th, 9th, 10th and 11th grounds alleged in the motion for a new trial except to the momentary separation of a part of the jury from their bailiff and the rest, to his purchasing whiskey for them at their request, to his being of tender

years, (17 years old,) and to his locking them up and going
to bring them water, &c. No tampering with them by any
one is shown, no conversation between them and any other
person, no intoxication from the use of spirits, no conse-
quences injurious to the defendants from any of the matters
complained of.

Under the ancient Common Law practice, when jurors
were, in a capital case, to be kept together "without fire or
candle," possibly the accidental and momentary separation
which took place in this case might have been fatal to the
verdict; but the rigor of this practice having been long since
relaxed, the consequences of a separation have been corres-
pondingly modified, until now it is generally held, in our sis-
ter States, that a separation of the jurors in such a case is not,
*per se*, fatal to a verdict, but some injury must appear to have
resulted from it to give it that effect. (Grayson v. Common-
wealth, Va., 6 Grat. R. 712; Commonwealth v. Thompson,
8 Id. 637; Stanton v. The State, 8 Ark. R. 317; Cornelius
v. The State, 7 Eng. R. 810; State v. Prescott, 7 New Hamp.
290; State v. Babcock, 1 Conn. R. 401; State v. Miller, 1
Dev. & Bat. R. 500; Wyatt v. The State, 1 Blackf. 25;
Commonwealth v. Roby, 12 Pick. 496; State v. McElmur-
ray, 3 Strobh. 33.)

As to the minority of the bailiff, I have discovered no prin-
ciple or adjudication which prescribes any particular legal
qualifications for this officer. The counsel for the appellants
may be more fortunate. If so they must have the benefit of
the discovery.

LIPSCOMB, J. This is an appeal from a judgment on a con-
viction of the appellants, on a charge of murder in the first
degree; the first named appellant as principal, and the second,
as accessory before the fact. The trial and conviction was at
the last Term of the District Court for Madison county. There
had been a trial at the preceding Term of the Court, and the
appellants had been found guilty of murder in the second de-

gre; the first named, as principal, and the last named, as accessory before the fact. The verdict was set aside and a new trial awarded, which new trial resulted as above stated, in the conviction of both, of murder in the first degree. A motion was made for the discharge of Nancy Jones, on the ground that she was indicted as accessory before the fact, to the principal, George Jones, and both having been found guilty of murder in the second degree, the accessory could not be punished, because there could be no accessory before the fact, to murder in the second degree. There was, also, a motion made for a new trial, on various grounds—both motions were overruled.

The overruling these motions, with various other grounds, have been assigned for error. Such of them as are considered as presenting any question of law, will receive our most deliberate attention and thorough investigation; others that we regard as merely questions of practice, will be disposed of in a more cursory manner, and with these we will begin, leaving the most important to be last discussed.

On the charge that the Judge assumed the province of directing the jury as to what had been proved, and thereby entrenched upon the province of the jury, we will say but little, because, on looking into the record, we do not believe the charge is sustained. Whilst we are at all times bound to sustain the right of the jury to decide on facts given in evidence, yet we are fully aware that it oftentimes occurs, that in charging on the law, the Judge is more distinct, and can be better understood by calling their attention to the evidence, of a particular fact or facts, if it is a controverted one, for the purpose of directing the jury to the rules of law that must govern them in arriving at the truth, and if uncontroverted for the application of the law to the fact. All that is required of the Judge, is, that he should neither decide upon the facts, nor endeavor to influence the jury in their decision on the facts; and there is nothing in the record from which it can be inferred that the province of the jury was attempted to be invaded.

The counsel for the appellants put an abstract proposition to the Judge, in asking his instruction to the jury: that supposing the witnesses equal, before the jury, in credibility, that the greater number must prevail. This proposition is an abstract one, because the record does not show the witnesses to be in this category. But the proposition is unsound, because it fixes an arbitrary rule for the government of the jury in deciding on the weight of evidence, when the credibility of the witnesses has not been impeached, and they have all, therefore, went before the jury as equal. Now, in such cases, the jury giving weight to testimony so conflicting, must determine which is entitled to most influence, and this they may do from various considerations, the manner, expression, intelligence, and which is likely to be best informed, from his situation and intelligence. The rule asked by the appellants may have received the sanction of respectable authority, but we believe it is too arbitrary and looks like substituting a physical weight for the moral influence by which the jury should be governed.

We do not believe the Judge erred in refusing to charge the jury; that the immoral character of a witness destroyed, or invalidated her testimony. All the witnesses who testified to the character of the witness being bad, limited her bad character to the general reputation of a want of chastity. This is certainly a great want of morality in a man, or woman either, but it did not render her infamous in the legal sense of the term infamous; and all the witnesses said they knew nothing against her character for truthfulness, therefore she was clearly a competent witness. How far the want of chastity would impair her credit, was a question to which the jury had the right and sole right to respond.

The appellants asked the Court to charge the jury, in effect, that if a confession of the accused was proven to have been made, at one time, by one witness of the State, and proved to have been denied at another time, by another witness for the State, that one would destroy the other, and had, both, to be taken together. If this rule could be sustained, it would allow the accused to make

evidence in his own defence. The rule is that a person's declarations or admissions shall be evidence against himself, but not in his own favor. There is, however, a qualification to this rule, and that is, that the confessions are not to be cut up, and a part only received, and that part against the accused; but that all that the party said, at the time of making the alleged confession, to qualify or explain it is to be received. It does not extend to what he may have said at another time.

It has been said in argument, that the Judge had refused to charge the jury, that the confession of a party accused of a felony, should be received with very great caution, and that a jury should hesitate to convict upon such confession, unless corroborated by other circumstances. This is certainly a legal principle of evidence, founded on sound philosophy, and the purest humanity. But the Judge could not be called to give this charge unless the facts in evidence made such charge applicable. Under the influence of the rule regulating confessions, it would not be legal to convict, on the naked confession of the party accused of an offence, unless such offence had been proven to have been committed by some person. So if a man confesses that he had murdered A, it must be proven that A had been destroyed. Or, in the language of the law, the *corpus delicti* must be proven. The Judge in this case may well have refused to give the charge, because it was not at all applicable to the facts and circumstances by which it was corroborated and surrounded. In this case, there is no doubt of the life of the man being destroyed, and *prima facie*, it was felonious killing. There was no evidence of surprise, fright, or any inducement held out to make the confession; such circumstances would have been proper to be considered by the jury, and if any of them had been in evidence, the refusal of the Court to give the charge would have been error.

We will now proceed to the investigation of what we regard as the most important objections to the affirmance of the judgment in the case. It appears from the record that there was a third person indicted and put on trial with the appellants, who

was acquitted. After the attorney for the State had closed his
testimony for the prosecution, it was proposed that the jury
should take the case of the party who was afterwards acquit-
ted by the verdict, and acquit her so that she might be made
a competent witness for her co-defendants, the present appel-
lants. This motion was predicated on the ground that the State
had offered no testimony that had inculpated her. The motion
was overruled. It may here be remarked that the statement
of facts does not show any evidence against Kissiana Jones,
who was acquitted. The appellants, after conviction, sought
to set aside the verdict and have a new trial, on the
affidavit of this acquitted party; and they urged it on the
ground of newly discovered evidence, contending that in prin-
ciple it was not to be distinguished, because, the evidence had
only become competent by the verdict of acquittal. It seems
to be settled, on well considered authority, that this was not
a good ground for a new trial. (American Criminal Law,
916; People v. Vermeten, 7 Cowan, 367.) Chief Justice
Savage, in giving the opinion overruling the motion for a new
trial in the case cited from Cowan, adds: " The proper course
" was, if the testimony against Davis was slight, to have the
" jury pass on his case and then introduce him as a witness
" on behalf of his co-defendant. We believe that the motion
" for a new trial, on the ground of newly discovered evidence,
" was properly overruled, according to adjudged cases, because
" it was not newly discovered, but only incompetent, as the
" parties must have been aware of its importance before they
" went to trial. If, however, the parties had neglected to offer
" to have the jury pass on the case, where little or no evi-
" dence was offered by the prosecution, we would, perhaps,
" have felt authorized to grant a new trial, not on the ground
" of newly discovered evidence, but on the ground that im-
" portant evidence was now within their power to produce,
" that the rules of law had put beyond their reach on the for-
" mer trial."

We believe, that the rule laid down by Chief Justice Sav-

age, is too technical to be stringently applied in a capital case; but we agree that it would be more regular to pursue the course indicated by him. In this case, however, we have no difficulty, even upon the most stringent rule, because the appellants did ask to have the benefit of the evidence, by a trial and acquittal of their co-defendant, and it was refused by the Court below. In our opinion, in all cases where two or more are jointly indicted and put on their trial together, and there is little or no evidence against one or more of the defendants, and such defendants are willing to be tried on the evidence of the prosecution, the jury should be instructed to pass on their case, before the other defendant or defendants have opened their defence, so that they may not be deprived of the evidence of co-fendants, who are not inculpated by the evidence of the State. There was error in the Court refusing to permit the jury first to pass on the case of Kissiana Jones, before the appellants opened their evidence.

The misconduct of the jury is assigned as a ground for reversing the judgment. It appears from the affidavit of the Bailiff, that, at the request of the jury, he had twice taken to them whiskey, and that they drank it; that this was after they had received the charge of the Court and retired to consider of their verdict; and that they had once separated whilst he was conducting them through the crowd, after they had taken their supper. The course of judicial decision upon the question, as to what kind of misconduct on the part of the jury shall be sufficient to vitiate their verdict, has been far from uniform; perhaps no question has presented so great a diversity of opinion. In England, the jury was subject to the most rigid iron rule, that they should be kept together without any refreshment whatever, neither meat nor drink, nor fire, until they had agreed, and the Bailiff was sworn, further, not to permit them to be spoken to by any one, nor to speak to them himself, but to ask them if they had agreed. In civil cases the rule was not so stringent, and it did not vitiate their verdict, if it was proven that they had sep-

arated, or taken refreshment, or spoken to any one, if it was proven that it had not influenced their verdict; and this seems to be the most uniform rule of decision in most of the States, each of them, however, showing a diversity of decision at different times. In the State of New York, it seems, that the drinking of ardent spirits by the jury where it was not furnished by the successful party, and they did not drink to excess, afforded no ground for setting aside their verdict. In the case of the People v. Douglass, a capital case, 4 Cowan, 26, two of the jurors separated from their fellows and from their officer, and ate, and drank spirituous liquors, and conversed with bystanders on the subject of the trial: the jurors knew they were disregarding the instructions of the Court, and for this irregularity their verdict was set aside. This is the version of the case given by Mr. Justice Brown.

In the case of Brant v. Fowler, 7 Cowan, 562, the jurors were not allowed to separate, but were permitted to leave the Court room accompanied by an officer. One of the number separated from the officer and drank brandy, and for this cause the verdict was set aside. In the case of Williams v. Abrahams, 1 Hill, 207, Bronson, Justice, commenting upon the foregoing cases said, " The case of Brant v. Fowler, can-
" not, I think, be supported. The mere fact that some of the
" jurors of their own head drank spirituous liquors in the
" course of the trial of a cause, if, as was admitted in that
" case, there was no mischief, cannot be a sufficient ground
" for setting aside their verdict. There is no authority, an-
" cient or modern, so far as I have observed, that goes far
" enough to uphold such a doctrine." He then contends that the case of the People v. Douglass, did not rest upon the mere fact of the jurors drinking spirits, but upon all the irregularities taken together, such as separating, and talking to bystanders about the case. We must conclude that in New York at this time the mere fact of the jury drinking spirits at their own procurement, is not sufficient, *per se*, to set the verdict aside. Mr. Waterman, in his notes to Archbald's Crim-

inal Law, in remarking on the cases cited from New York, says, In The State v. Prescott, 7 New Hampshire, 287, the Superior Court of New Hampshire did not seem prepared to follow the New York decisions of the People v. Douglass, and Brant v. Fowler, even in a capital case. Nor were they followed in Massachusetts, in Commonwealth v. Roby, 12 Pick, R. 510, 515, 516, which was also a capital case. In the State of Tennessee, in the case of Stone v. The State, 4 Humph. R. 27, it was decided that a new trial will not be granted upon the affidavit that the jury drank ardent spirits at their meals during the progress of the trial, without proof that they were thereby disqualified from duly considering the case. In the subsequent case of Hogshead v. The State, 6 Humph. R. 59, the point was made, of one of the jurors drinking ardent spirits, among other grounds, for setting aside the verdict; and Judge Reese, who delivered the opinion of the Supreme Court, granting a new trial, expressly declares that it is not granted on the ground of his drinking spirits, but on that of the juror's mental imbecility. This case must be regarded as then re-affirming the doctrine of Stone v. The State. We have found but two cases where the verdict was held to be vicious, upon the ground that the jurors, or part of them, had drank ardent spirits; those are the cases of the People v. Douglass, and Brant v. Fowler. These cases, it seems, were overruled by the case of Williams v. Abrahams, 1 Hill, though Mr. Justice Bronson thinks that the first of these did not rest upon the fact of ardent spirits being drank by the jury; but according to our reading, it was expressly rested upon that ground, as the Judges say that the other grounds were not sufficient. The weight of authority seems to be against making the single fact of the jury drinking ardent spirits, *per se*, a sufficient ground for setting aside the verdict. It is treated as any other act of misconduct; that if furnished by a party, or if it has had an influence on the jury in finding their verdict, it would be grounds for setting it aside. We, however, with due respect for the Judges who have maintained this

doctrine, are constrained to depart from their opinions; and we believe that the view they have taken of the effect of ardent spirits on the feelings, and also on the mind, has been superficial, and not at all philosophical. Every day's experience must satisfy us that it is impossible to lay down a rule as to how much can be drank without impairing the qualification of a juror for discharging the trust confided in him. Its effects have been well described by Scotland's most popular bard:

> Inspiring bold John Barleycorn!
> What dangers thou cans't make us scorn!
> Wi' tippenny we fear nae evil;
> Wi' usque bae, we'll face the devil.

Yes, it is but too true, that it will make a man bold and reckless, not only of consequences, personally, but also of the rights of those whose life and most valuable interests, property and reputation are at stake; and its effect is so very different on different men, that it would be dangerous in the extreme to attempt to lay down any rule by which it could or should be determined whether a juror had drank too much or not; and the only safe rule is, to exclude it entirely.

The rule laid down in the two overruled cases in New York, is founded in wisdom, and a careful regard to the pure and impartial administration of the legal rights of parties, and we adopt it as the law of this Court.

We have discussed this subject on the ground of misconduct of the jury. We have done so because this is the only one we conceive was established by the record. There does not appear to have been such a separation of the jury, or conversing with others, as would vitiate the verdict. We are aware of the difficulty, in the present condition of our country, of keeping the jury entirely secluded; hence, the propriety of a relaxation of the rigor of the ancient rules upon this subject. That the jury should be kept to themselves, as far as practicable, and that they should not be permitted to separate, without the consent of the Court, cannot be doubted; but whether they should be permitted so to separate, and under

what circumstances, must be, in a great measure, left to the discretion of the Judge presiding. (See Smith v. Thompson, 1 Cowan, 221, and note thereto.) Where the jury, or any number of them, have separated without the consent of the Court, we believe the following rules laid down by Judge Green, in Hines v. The State, 8 Humph. R. 597, are correct, and should be observed : " 1st. That the fact of the separa-
" tion having been established by the prisoner, that the possi-
" bility that the juror has been tampered with, and has re-
" ceived other impressions than those derived from the testi-
" mony in Court, exists, and *prima facia*, the verdict is
" vicious. But 2nd. This separation may be explained by
" the prosecution, showing that the juror had no communi-
" cation with other persons, or that such communication was
" upon subjects foreign to the trial, and, that in fact, no im-
" pressions other than those drawn from the testimony, were
" made upon his mind. But 3rd. In the absence of such ex-
" planation, the mere fact of separation is sufficient ground
" for a new trial." We believe that the same rules will ap-
ply in civil cases.

It is believed to be proper on this occasion to notice with reprehension what we regard as culpable negligence in this case, whilst before the Court below. It is certainly the duty of the prosecuting attorney and the Judge, to see that some discreet, prudent man, shall take charge of the jury, and not an ignorant youth of seventeen years of age, as bailiff, in a capital case. The bailiff should be specially sworn for the occasion, and properly instructed in his duties : that he should not permit them to separate without the consent of the Court, if in his power to prevent it ; that he should not permit them to take food, without the consent of the Court ; that, as far as was in his power, he would prevent their conversing with any person not belonging to their body, and should not permit their drinking ardent spirits.

The next question to discuss is an important one, and presented for the first time in this Court, and we believe, but sel-

dom in any Court. It is, whether the appellants, after having been put upon their trial for murder, and found guilty in the second degree, and a new trial granted, can be legally convicted on the second trial, of murder in the first degree?

This question has not often been adjudicated. Mr. Wharton, in his American Criminal Law, a work of great merit and regarded as high authority, lays down the doctrine to be, that where there are different counts in an indictment, presenting distinct offences, a conviction of an inferior offence presented in one count, an acquittal on the other counts, and a new trial, that the prisoner cannot be convicted of the higher offence charged in the counts on which he had been acquitted; but if the same count embraces two offences of different grades, and there is a conviction of the inferior offence, and a new trial, the new trial will again open the whole case to the Court, and the prisoner may be convicted, on the second trial, of the higher offence; and he cites the case of The State v. Morris, 1 Black., 37, and the opinion of Mr. Justice Grier, in the Circuit Court of the United States at Philadelphia, reported in the Penn. Law Journal, 22. We have no access to the case cited from Blackford, but the case decided in Philadelphia shows the decided opinion of the Court in support of the rule laid down by Mr. Wharton. Several persons had been tried for murder and convicted of manslaughter, and a motion made by them for a new trial. The Judge earnestly cautions them to consider well before they asked for a new trial, assuring them, if a new trial should be granted, on the second trial the jury might find them guilty of murder, and their lives might be forfeited. The question is not discussed by either Mr. Wharton or Judge Grier. The rule is only laid down by them; it seems to them to be unquestionable.

On the other side is the deliberate opinion, more than once expressed, of the Supreme Court of Tennessee, and the opinion of the Supreme Court of Mississippi, that the conviction for the higher offence, after a conviction of an inferior one, cannot be sustained. It would seem that the latter doctrine is

best sustained on principle.  The finding of not guilty of the higher offence, is, so far, a discharge of the prisoner, a discharge of the offence ; and it would not be supposed for a moment that he would be dissatisfied or agrieved thereby, and we have no authority for trying him again for the offence.  If he should under a hardly conceivable infatuation, ask for it, the Courts would say, you have been acquitted ; we cannot try you again for that offence.  But for the offence of which he is found guilty, he has a right to ask for a new trial.  The Courts, on a proper case, ought to grant it ; and can try him again for the offence of which he had been convicted, but for no other.

The affirmative of the proposition claims strength from the supposed entirety of the verdict, that it could not be set aside in part and stand in part.  This argument was held to be unsound in the case of the King v. Mawbey, 6 Term, R. 638, where all the Judges held that a verdict acquitting some of the prisoners and convicting others, could be set aside as to those convicted, without setting it aside as to those acquitted ; and the same agrument was met by Judge Green, and with his usual ability abolished, (Campbell v. The State, 9 Yerger, 333,) and the Judge insists that, in principle, this is not different from setting aside the verdict so far as it convicted, without disturbing that part of it that acquitted.  The same doctrine was re-affirmed by the same distinguished Judge, in the case of Slaughter v. The State, 6 Humph. 410.  The same doctrine was sustained by the Supreme Court of Mississippi, in a well written opinion of Judge Fisher, in the case of Hart v. The State, Livingston's Magazine for April, 1854.  The result of our investigation is, that both on principle and the authority of adjudged cases, the appellants, after having been acquitted of murder in the first degree and found guilty of murder in the second degree, could not be legally tried and convicted of murder in the first degree, and that the verdict so finding them cannot stand as the basis of a judgment and execution thereon.

One more novel and important question remains to be discussed and decided. The indictment in this case charges the appellant George Jones with murder, as principal, and Nancy Jones, the other appellant, as accessory thereto before the fact. The principal being acquitted of murder in the first degree, Nancy Jones, indicted as accessory, claims to be discharged, on the assumption that there can be no accessories before the fact to murder in the second degree.

This proposition is attempted to be sustained, on the ground of analogy to a finding the principal in an indictment for murder, not guilty of murder, but guilty of manslaughter; which, it is admitted, would discharge an accessory before the fact; there being no such offence known to the law as accessory before the fact to manslaughter. The analogy is not perceived. The offence of manslaughter, from its legal character, excludes the possibility of an accessory before the fact, as an element of its composition. It is committed suddenly, without reflection, in heat of passion, and without malice expressed or implied, and repels the supposition that the homicide was the result of premeditation, concert or aid; all of which would be evidences of malice. Now, if the homicide had been committed without any of these *indicia* of malice, it could not be murder in the second degree. To constitute this offence, then, there must be malice, and if malice, it would admit of complicity. The appellants seem to confound murder in the second degree with manslaughter, because the statute defines what kind of evidence of malice constitutes murder in the first degree. The statute, however, only designates such kind of murder as would be accompanied by the clearest and most express malice, making murder with any other malice, of the second degree. One might encourage and counsel another to commit some violent outrage on the person of a third person, mayhem or the like, not to kill; but in the execution of this design, a homicide might be committed. This would be murder in the second degree, under the statute; because it is not embraced in the statute classification of the evidences of mal-

ice, to make it murder in the first degree.    But it being murder it falls under the second degree.    Murder in the first degree, under our statute, is " committed by poison, starving, " torture, or other premeditated and deliberate killing; or " committed in the perpetration, or in the attempt at the per" petration of arson, rape, robbery or burglary."    (Hart. Dig. Art. 2515.)    Now, such killing as is described in the statute cited, as constituting the first degree of murder, would be, at Common Law, murder with express malice; leaving for the second class all murders with implied malice, not so designated; as would be the case if there was a preconcerted act to commit some other felony, but not to kill, and the killing ensued in the attempt.    The conclusion that we arrive at is, that as murder in the second degree can only be committed with malice, that it admits of accessories, and there was no error in refusing to discharge the appellant Nancy Jones. But, for the errors before stated, the judgment is reversed and the cause remanded.

Reversed and remanded.