DAVIS *v.* THE STATE.

WITNESS.—*Expert.*—*Insanity.*—Physicians who are engaged in practice, and have given the subject of medical jurisprudence some attention, by reading and by attending lectures, may be examined as experts on the subject of insanity.

SAME.—*Evidence.*—The extent of a witness's acquaintance with the subject about which he testifies as an expert may always be inquired into, to enable the jury to estimate the weight of his evidence.

SAME.—*Court.*—*Jury.*—Whether a witness is competent to testify at all as an expert, is a question for the court; but after he has been allowed to testify, the weight of his evidence is a question for the jury.

SAME.—*Hypothetical Case.*—*Practice.*—If there is no dispute as to the facts on which a witness is to base his opinion as an expert, it is proper to require that the question propounded shall embrace them all, and that the witness shall take them all into consideration in giving his answer. But if the facts are in dispute, the question propounded may be based upon the facts which the evidence tends to prove; and the jury may decide ultimately whether the facts are established by the evidence or not.

SAME.—When a witness examined as an expert expresses an opinion based on facts assumed by the party introducing him to have been proved, or upon a hypothetical case put by such party, then the other party may cross examine the witness by taking his opinion based on any other set of facts assumed by him to have been proved, or upon a hypothetical case.

MISCONDUCT OF JURY.—*Intoxicating Liquor.*—In a criminal cause, after the jury had been charged by the court and put in the care of a bailiff to consider of their verdict, the bailiff went with two of the jurors to a liquor and billiard saloon, where other persons were drinking and playing billiards, and procured for each of the jurors a drink of brandy, ginger wine, nutmeg, and sugar, which they drank, and one of them paid for; and it was not shown where the other jurors were at the time said two were absent with the bailiff at the saloon; and the transaction was unexplained, except that the bailiff asked the saloon keeper when he called for the drinks, if he could not fix up something for the jurors for the diarrhœa.

*Held,* that this was good cause for setting aside a verdict rendered by said jury against the defendant and granting him a new trial.

APPEAL from the Clinton Circuit Court.

DOWNEY, C. J.—This was an indictment against the appellant for murder in the first degree. Plea of not guilty. Trial by jury; verdict of guilty; motions for a new trial and in arrest of judgment overruled; and judgment that the defendant be hanged.

Several errors are assigned, but they are all expressly waived in the brief of appellant's counsel, except that which alleges the improper refusal of the circuit court to grant a new trial.

Two physicians were introduced and examined, on behalf of the State, as rebutting witnesses on the subject of insanity. It is urged by the defendant that they are not shown to be sufficiently conversant with insanity to entitle them to be regarded and examined as experts. One of them had been practicing his profession for fifteen, and the other for twenty-five, years, and they had each given the subject of medical jurisprudence some attention, by reading works on the subject and by attending lectures.

We think they were competent to testify on the subject, as experts. "Insanity being deemed a disease, it is believed to be the general custom of our American judges, throughout the country, to accept of all educated and practicing physicians as experts, whether they have given special attention to the disease of insanity or not." 1 Bishop Crim. Law, sec. 544. The witnesses in this case, however, had, in addition to their medical studies, given some attention to the subject of insanity. See *Baxter* v. *Abbott*, 7 Gray, 71. The extent of the witness's acquaintance with the subject may always be inquired into, to enable the jury to estimate the weight of his evidence. Whether he is competent to testify at all as an expert, is a question for the court. But after he has been allowed to testify, the weight of his evidence is a question for the jury.

The prosecuting attorney was allowed to enumerate certain facts, which he assumed were established by the evidence, and upon them to ask each of these witnesses his opinion as to whether they indicated soundness or unsoundness of mind in the defendant. Counsel for the defendant objected to this, insisting that all the facts bearing on the subject were not enumerated in the question. But the court allowed the question to be answered. If there is no

dispute as to the facts on which the witness is to base his opinion, as an expert, it is then proper to require that the question shall embrace them all, and that the witness shall take them all into consideration in giving his answer. But if the facts are in dispute, this course is impracticable. In such a case, it seems to us proper to allow counsel to base their questions upon the facts which the evidence tends to prove, and let the jury decide, ultimately, whether they are established by the evidence or not.

After the prosecutor had propounded to these witnesses the question as to the sanity or insanity of the defendant, based on the facts assumed by him to have been proved by the evidence, and got an answer thereto, the defendant's counsel propounded to the witnesses the same question based on facts which they assumed to have been proved by the evidence, and claimed an answer thereto. To this the prosecutor objected, on the ground that it was not a cross examination, and the objection was sustained by the court. This ruling was wrong. We think that when such a witness has expressed an opinion based on facts assumed by the party introducing him to have been proved, or upon a hypothetical case put by such party, the other party may cross examine him by taking his opinion based on any other set of facts assumed by him to have been proved by the evidence, or upon a hypothetical case put by him. The witness having expressed an opinion as to the sanity of the party, it is extremely important to such party to go fully into the reasons for such opinion; and he should be allowed to call the attention of the witness to any and every view of the facts which will tend to test the correctness of such opinion. The witnesses having been called and examined as rebutting witnesses, this right of cross examination was of the utmost importance to the defendant, as he could not introduce the persons as his own witnesses at that stage of the case, or bring others to overcome their evidence.

In *The People* v. *Thurston,* 2 Parker Cr. 49, such a cross examination of a medical witness as that demanded in this

case was allowed, without objection. In *Huckleberry* v. *Riddle*, 29 Ind. 454, this court had occasion to consider the subject of cross examination, and, among other things, said: "A cross examination is worth little, if thereby false impressions, created by the examination of the party calling the witness, may not be corrected by it, by showing additional facts connected with the same subject, in the light of which inferences, otherwise legitimate and natural, would be prevented."

After the jury were charged and put in the care of a bailiff, that they might consider of their verdict, the bailiff, with two of them, went to a liquor and billiard saloon, where other persons were drinking and playing billiards, and the bailiff procured for each of them "a drink of brandy, ginger wine, nutmeg and sugar," which they drank, and which was paid for by one of them. The saloon-keeper swears, in his affidavit, that the bailiff asked him if he could not "fix up something for said jurors for the diarrhœa." The evidence does not show where the other jurors were at the time when the two with the bailiff were in the saloon. There was no attempt to show that the jurors were really suffering with diarrhœa, how much liquor they drank, what effect it had upon their fitness to deliberate on the case, where the other jurors were, or in any other way to break the force of the showing made by the defendant.

The bailiff, we may presume, had been sworn in the usual form, to take charge of the jury, and keep them together without meat or drink, water only excepted, &c. The jurors had taken upon them an oath, well and truly to try the cause, &c., and had been solemnly sent out to deliberate upon questions involving the life of an unfortunate fellow-being. If misbehavior, such as that shown by the affidavits, and which is without attempted palliation or justification, should not be regarded as sufficient to set aside the verdict, it would be a stigma upon the law and a disgrace to the courts. We do not mean to say that the court should enter upon the question as to how far such conduct was or was

not excusable or innocuous. It will be time to decide that question when it shall come up. In this case it does not arise. We concede that on this point the authorities are not uniform. But as to the sufficiency of such misbehavior unexplained, to set aside the verdict, the authorities are abundant and satisfactory.

Without deciding the question, this court intimated this opinion in *Creek* v. *State*, 24 Ind. 151. In *Ryan* v. *Harrow*, 27 Iowa, 494, a civil cause, the court, after reviewing the decisions on the point, held, for the second time, the first having been in a criminal case, that the drinking of intoxicating liquor by one or more of the jurors, during the discharge of their duties as such, constituted sufficient ground for setting aside the verdict and ordering a new trial. The learned judges refused to enter into any inquiry as to how far, or whether at all, the jurors became intoxicated. They use this language: "The view we take of the case will relieve us of the duty of determining whether the charge of intoxication is sustained by the record. And we are glad to escape so unpleasant an investigation, which might result in convincing us that the administration of the law in our State has been disgraced by the drunkeness of those appointed to decide, in a court of justice, upon the rights of their fellow-citizens. We had hoped that such things were of the past, and would only be remembered as rare instances existing in the traditions of frontier days." In *The People* v. *Douglass*, 4 Cow. 26, and *Brant* v. *Fowler*, 7 Cow. 562, one a criminal and the other a civil case, the court held the mere act of drinking the liquor by the juror as sufficient to set aside the verdict. In the latter case, the juror, as in this case, took the liquor for diarrhœa, showing the prevalence of that complaint among jurors.

It is true that in *Wilson* v. *Abrahams*, 1 Hill, 207, it is held, in modification of the cases in Cowen, that the mere fact of drinking spiritous liquors by a juror, during the progress of a trial, is not, *per se*, sufficient to warrant the setting aside of the verdict.

In *The State* v. *Bullard*, 16 N. H. 139, the court held the mere fact of using the liquor to be sufficient to annul the verdict, saying, " We are of the opinion that the use of stimulating liquors by a jury deliberating upon a verdict in a criminal case, without first showing a case requiring such use, and having leave of the court for that purpose, is a sufficient cause for setting aside a verdict found against the prisoner, in such circumstances, whether the use was an intemperate one or otherwise."

Such is the rule in the Supreme Court of Texas. In *Jones* v. *The State*, 13 Texas, 168, the learned judge who delivered the opinion of the court, after speaking of the contrary rule, says, " We, however, with due respect for the judges who have maintained this doctrine, are constrained to depart from their opinion ; and we believe that the view they have taken of the effect of ardent spirits on the feelings, and also on the mind, has been superficial, and not at all philosophical. Every day's experience must satisfy us that it is impossible to lay down a rule as to how much can be drank without impairing the qualification of a juror for discharging the trust confided in him. Its effects have been well described by Scotland's most popular bard.:

> ' Inspiring, bold John Barleycorn !
> What dangers thou canst make us scorn !
> Wi' tippenny we fear nae evil ;
> Wi' usquebae, we'll face the devil.'

" Yes, it is but too true, that it will make a man bold and reckless, not only of consequences, personally, but also of the rights of those whose life and most valuable interests, property and reputation are at stake.; and its effect is so very different on different men, that it would be dangerous in the extreme to attempt to lay down any rule by which it could or should be determined whether a juror had drank too much or not; and the only safe rule is to exclude it entirely."

In *Pelham* v. *Page*, 6 Ark. 535, it is held, that the circulation of spirituous liquors among a jury, while sitting as such,

even with the consent of the parties, is cause for reversing the judgment; but that if the evidence is before the Supreme Court, and that shows that the verdict was right, it will not be set aside.

In *Gregg* v. *McDaniel*, 4 Harring. Del. 367, a verdict was set aside on the ground that intoxicating liquors had been introduced into the jury room and used, pending their deliberations.

In *The Commonwealth* v. *Roby*, 12 Pick. 496, SHAW, C. J., after an examination of the authorities, says: "The result of the authorities is, that where there is an irregularity which may affect the impartiality of the proceedings, as where meat and drink or other refreshment has been furnished by a party, or where the jury have been exposed to the effect of such influence, as where they have improperly separated themselves, or have had communications not authorized, there, inasmuch as there can be no certainty that the verdict has not been improperly influenced, the proper and appropriate mode of correction or relief is by undoing what is thus improperly, and may have been corruptly done; or where the irregularity consists in doing that which may disqualify the jurors for proper deliberation and exercise of their reason and judgment, as where ardent spirits are introduced, there it would be proper to set aside the verdict, because no reliance can be placed upon its purity and correctness. But where the irregularity consists in doing that which does not and cannot affect the impartiality of the jury, or disqualify them for exercising the powers of reason or judgment, as where the act done is contrary to the ordinary forms, and to the duties which jurors owe to the public, the mode of correcting the irregularity is by animadversion upon the conduct of the jurors or of the officers, but such irregularity has no tendency to impair the respect due to such verdict." See the authorities there cited, and also the *The State* v. *Prescott*, 7 N. H. 287.

The statute provides that the court may grant a new trial for the following causes, or any of them:

First, when the jury has received any evidence, paper, or document, not authorized by the court, or the court has admitted illegal testimony, or for newly discovered evidence.

Second, when the jury have separated without leave of the court, after retiring to deliberate upon their verdict, or have been guilty of any misconduct tending to prevent a fair and due consideration of the case.

Third, when the court has misdirected the jury in a material matter of law.

Fourth, when the verdict is contrary to law or evidence; but not more than two new trials shall be granted for this cause alone. 2 G. & H. 423, sec. 142.

We need not decide, in this case, whether the separation of the jury alone, would imperatively require us, under this statute, to grant a new trial.

The judgment is reversed, and the cause remanded.

*F. Claybaugh* and *R. P. Davidson,* for appellant.

*B. W. Hanna,* Attorney General, for the State.