### Robert Rice *v.* The State.

1. Charge on Weight of Evidence. — In a murder case the court below instructed the jury to find the accused guilty if they believed from the evidence that the deceased was killed under the circumstances detailed by a designated witness. *Held,* a charge on the weight of evidence, necessitating a reversal of the conviction.

2. Same. — It is not the province of the judge to say to the jury on what evidence they should convict. The jury are the *exclusive* judges of the facts proved and of the weight of testimony; and a charge to a jury is not perfectly unexceptionable if it expresses or intimates any opinion on the weight of evidence or the credibility of statements made by the accused or the witnesses.

Appeal from the District Court of Refugio. Tried below before the Hon. H. C. Pleasants.

The deceased, Bill Johnson, was a colored boy in the

employ of Jack West.   On or about April 16, 1873, while herding horses for his employer near a public road, he was shot in the back, and died eighteen days afterwards from the effect of the wound.   According to the evidence, the deed was the inspiration of mere drunken wantonness and thirst for blood.

The state introduced no witness who saw the perpetration of the crime.   The controverted question, however, on the trial of the appellant, was, not the character of the deed, but whether he had any agency in its commission.

Jack West, the employer of the deceased, was the principal witness for the state.   He had passed where deceased was herding the horses, some 400 yards from the house, and observed two men riding up the road in company with a wagon.   These men were identified by other witnesses as the appellant and Calvin Perkins.   After reaching his house, witness noticed the two men and wagon pass on up the road in the direction of the herd.   Witness went in to his dinner, and, while eating, heard the report of a pistol, and in a few minutes his brother came in and said that the boy Johnson had been shot.   Witness went out and found Johnson about 100 yards from where witness had left him before going to his dinner.   He was lying on the ground, on his face, shot in the back.   He told witness he was shot and must die, and that, if witness intended to move him, to do so at once.   Witness was certain that Johnson thought he would die immediately, and was perfectly sane.

Johnson then told witness that the two men who were traveling with the wagon had shot him; that he did not know their names, but knew and described the residence of Calvin Perkins and appellant; that, when the two men came near to him, they stopped, and one of them said, "Let us go for him;" that one of them unloosed his rope and prepared it as if to throw it; the other one wore white leg-

gins, and was riding a bay horse; that these men started towards him, and he broke to run, on the mare he was riding, and thought he would have escaped to the house, but that the man with the rope ran in and frightened his mare, cutting him off from the house and turning him towards the other man, who fired at him with a pistol, shooting him so that he fell from his mare; that, while he was lying on the ground, the same man shot at him again, and then both of the men rode off rapidly into the woods.

After Johnson made this statement, the witness West took him to his house and sent for a physician, and himself went for a writ for the arrest of the parties implicated by the statement of Johnson. Witness and the sheriff went to the neighborhood where the appellant and Calvin Perkins lived, and to the house of the appellant's father. They were not to be found, however, and appellant was not arrested until about a year afterwards.

Johnson lingered for about eighteen days, and then died from the wound he had received, which entered at the back and penetrated the abdomen, injuring some of the intestines. The night before he died he repeated to the witness West the same account of the matter as he gave in the first instance.

Other witnesses for the state identified the appellant as one of the two horsemen traveling along with the wagon and implicated by the dying declarations of the deceased.

George Reider, for the accused, testified that he was the driver of the two-horse wagon on the occasion in question, and was accompanied by the appellant and Calvin Perkins, who were on horseback; that Perkins had a pistol, wore white leggins, and rode a bay horse; that the appellant had no pistol. Perkins and the appellant were drunk and noisy, and rode sometimes before and sometimes behind the wagon. Witness noticed the negro boy herding horses about 100 yards from the road; that just previously

th? appellant and Perkins had been riding in front of the wagon, and the appellant fell back and rode alongside of witness. Perkins fell back about twenty feet behind the wagon. Witness noticed the negro boy ride towards Perkins, and immediately Perkins, pulling off his gloves, rode towards the negro. When witness next looked around, he saw the negro sitting on the ground and his horse running off with the saddle on, and saw Perkins riding in a gallop towards the timber; that Rice, the appellant, was riding alongside of witness until Perkins galloped off towards the timber, and then Rice rode off and joined Perkins. Witness heard no report of a gun or pistol, probably because of the noise made by the wagon he was driving. Perkins had since been killed.

*Lane & Payne*, for the appellant.

*George McCormick*, Assistant Attorney General, for the State.

White, J. Two parties, one Calvin Perkins and this appellant, Robert Rice, were jointly indicted at the December term, 1873, of the District Court of Refugio County, for the murder of one Bill Johnson, a freedman of color. As shown by the evidence, Calvin Perkins, since the finding of the indictment, has himself been killed. Appellant, Rice, was tried at the October term, 1877, and the trial resulted in his conviction of murder in the second degree, with the punishment affixed at five years' imprisonment in the penitentiary.

The court, in the charge to the jury, instructed them that they would find the defendant guilty if they believed from the evidence that the deceased was killed under the circumstances as detailed by the witness Jack West. This, we think, was in effect the same as though the judge had said: " If you believe Jack West's testimony, you should find the

defendant guilty, without reference to what any of the other witnesses might have said." Clearly, such a charge would be upon the weight of evidence.

It is not for the judge to say what evidence shall be sufficient to warrant the jury in convicting. The province of the judge is to pass upon the legality and admissibility of evidence; and, when he has permitted it to go to the jury, then, the law says, the jury are the exclusive judges of the facts in every criminal case (Pasc. Dig., art. 3059), and that the jury in all cases are the exclusive judges of the facts proved and of the weight to be given to the testimony. Pasc. Dig., art. 3108. See *Leverett* v. *The State, ante*, p. 213.

" A charge is perfectly unexceptionable only when it sets forth the law applicable to the case, without expressing or intimating any opinion as to the weight of the evidence or the credibility of statements made by the party accused or by the witnesses." *Ross* v. *The State*, 29 Texas, 499; *Jones* v. *The State*, 13 Texas, 175; *Butler* v. *The State, ante*, p. 48.

" A charge, therefore, which extends beyond a plain statement of the *law* of the case as required by the Code may invade the province of the jury, the full and independent exercise of which has been so plainly and earnestly sought by the Legislature." *Brown* v. *The State*, 23 Texas, 202; *Bishop* v. *The State*, 43 Texas, 390; *Searcy* v. *The State*, 1 Texas Ct. App. 440; *Long* v. *The State*, 1 Texas Ct. App. 466; *Massey* v. *The State*, 1 Texas Ct. App. 563.

For error in the charge of the court, the judgment is reversed and the cause remanded.

*Reversed and remanded.*