[No. 677.    December 18, 1896.]

# UNITED STATES OF AMERICA, APPELLEES, v. B. B. SPENCER, APPELLANT.

CRIMINAL LAW—MISCONDUCT OF JURY—IMPEACHMENT OF VERDICT—ONUS —NEW TRIAL.—Where a verdict of guilty in a criminal case was impeached by the affidavits of persons not jurors, showing that the jury were permitted by the bailiff to separate, visit saloons, and drink intoxicating liquors,—Held: That it was incumbent on the prosecution to show that defendant was not prejudiced by such misconduct on the part of the jury, and for failure to do so defendant was entitled to a new trial.

APPEAL, from the Second Judicial District Court, convicting defendant of unlawfully cutting timber on the public domain.    Reversed and new trial granted.

The facts are stated in the opinion of the court.

A. L. MORRISON for appellant.

The court erred in not granting appellant a new trial because of the misconduct of certain of the jurors impaneled to try the cause.    Thomp. & Merr. on Juries, sec. 378; Studley v. Hall, 22 Me. 198; Jones v. State, 13 Tex. 168; State v. Baldy, 17 Iowa, 39; Fairchild v. Snyder, 43 Id. 23; Davis v. State, 35 Ind. 496.    See, also, People v. Douglass, 4 Cowen, 26; Lighton v. Sargent, 31 N. H. 130; Ryan v. Harrow, 27 Iowa, 494; State v. Parrant, 16 Minn. 176; Palmore v. State, 29 Ark. 248; Mattox v. U. S., 146 U. S. 140.

GEO. P. MONEY, assistant United States Attorney, for the United States.

The drinking of liquor by jurors during the progress of a trial is not error, unless it be made to appear that the defendant has been prejudiced thereby.

Wilson v. Abrahams, 1 Hill (N. Y.). See, also, Pratt v. State, 56 Ind. 181; Railroad v. Porter, 32 Ohio St. 331; Roman v. State, 41 Wis. 312; O'Neill v. R. R., 45 Iowa, 550; State v. Washburn, 91 Mo. 575; State v. Tatlow, 34 Kan. 80; Russell v. State, 53 Miss. 383; Commonwealth v. Roby, 12 Pick. 496; State v. Baber, 74 Mo. 294; Ins. Co. v. Kelly, 23 Pac. Rep. 1046; Sharpe v. Merriman, 66 N. W. Rep. (Mich.) 372; Gordon v. R'y, 29 S. W. Rep. (Ky.) 321; Sanitary Dist. v. Cullerton, 35 N. E. Rep. 724; Lumber Co. v. R. R., 10 S. Rep. (Miss.) 69; Vaughn v. Crites, 62 N. W. Rep. 1099; Carter v. Glass Co., 85 Ind. 180; State v. Livingston, 64 Iowa, 560; State v. Cucuel, 31 N. J. Law, 250; Jones v. People, 6 Colo. 459.

LAUGHLIN, J.—The appellant here and defendant in the court below was indicted on a charge of unlawfully cutting timber upon the public domain of the United States, and was on the ninth day of March, 1896, placed on trial; and on the eleventh day of March, 1896, the jury returned a verdict of guilty as charged, and after a motion for a new trial was made, argued, and denied, and a motion in arrest also being denied, the court sentenced the defendant to pay a fine of $300, and to serve a term of three months in the common jail of Bernalillo county, and the case is here on appeal from that judgment.

The record in this case discloses that the defendant was placed on trial, and the jury impaneled and sworn, and placed in custody of two bailiffs, on the ninth day of March, 1896; and that the trial continued until March 11, 1896, when the jury returned a verdict of guilty as charged. Among the grounds assigned in the motion for a new trial in the court below, and as errors for consideration by this court, are: Fifth. "Because said jury after being impaneled, sworn, and placed in the custody of two bailiffs to try the issues in the case,

were allowed to separate by said bailiffs, and, while so separated, drank spirituous liquors, before they returned to the jury room." Sixth. "Because said jurors, as aforesaid, were allowed to separate and visit a saloon, to wit, the saloon of Mrs. Muzio, located in Old Albuquerque, New Mexico." Eighth. "Because the sworn bailiffs permitted said jurors to separate and drink spirituous liquors, in disobedience of the strict and sworn instructions received from the court." Ninth. "Because said jury or jurors, while out and so separated, were allowed to talk to outsiders, in disobedience to the orders of this court, and to the prejudice of this defendant." The grounds in the motion were supported by affidavits of a number of persons, not jurors. The first affidavit is that of Panteleon Hill, who testified "that he was a street car driver at that time, and that at about 10 o'clock at night, March 9, 1896, one of the bailiffs, then in charge of the jury in this case, and two of the jurors, Cesario Grande and C. A. Hudson, boarded his car in front of Mrs. Muzio's saloon; that said Hudson at the time was drunk, and became noisy and quarrelsome and had a personal difficulty with the affiant, and with the bailiff who was then in charge of the two said jurors; that a number of other persons were there present in the street car." One Frank Di Luki made an affidavit that he was at that time the barkeeper at the said saloon of Mrs. Muzio, and that about 6 o'clock in the morning of March 10, 1896, said jurors C. A. Hudson and Cesario Grande and another member of said jury, Rafael Gabaldson, came to said saloon, called for whisky and drank it at the bar; and that said Grande purchased a bottle of whisky, put it in his pocket and carried it away with him. One Juan Baca y Salazar also made an affidavit that he saw Cesario Grande, Rafael Gabaldson, Juan Chaves y Trujillo, and said C. A. Hudson all at said saloon between 6 and 7 o'clock on the morn-

ing of said tenth day of March, drinking whisky, and that he saw both Grande and said Hudson each take a bottle of whisky away from said saloon, and that he knew all of said persons so named to be at that time members of the jury in this case. There are also affidavits of other persons supporting these facts, and it does not appear that any doubt exists as to the truthfulness of the facts set out in the affidavits. It further appears from the record that these affidavits were filed with the motion for a new trial, and that they are not traversed.

It is contended on the part of the appellee, in support of the verdict and judgment in the lower court, that, before the motion is available, it must appear that the separation or improper conduct of the jury resulted to the prejudice of the defendant. But this contention is not supported by the weight of authority. The general rule in criminal cases is that, where the verdict is assailed in the manner here shown, it is incumbent on the prosecution to repel the assault, and to show that no injury resulted to the defendant by reason of the alleged improper conduct on the part of the jury. Mattox v. U. S., 146 U. S. 149. The general rule is otherwise where the jurors attempt by affidavits to impeach their own verdicts. U. S. v. Reid, 12 How. 361; U. S. v. Biena, 8 N. M. 99. When the jury have been impaneled, sworn, and put in charge of bailiffs, it is vital that they should be excluded from all temptations from external influences which might in any manner tend to bias or prejudice their free and impartial deliberation. While it is a general proposition that the granting or refusing of a motion for a new trial is addressed to the sound discretion of the trial court, who is more capable to pass upon the equitable reasons assigned than the appellate court, purely from the reasons appearing in the record, yet there are exceptions to the general rule, and the case at bar

appears to be one of them.  The court below received the affidavits, permitted them to be filed, and they are here in the record.  That, manifestly, was the proper course for the lower court.  But the record does not show that the court in any manner considered or passed upon the competency of the affidavits, but denied the motion for a new trial, and passed judgment and sentence on the defendant, and they are now here for consideration by this court as a part of the record, as to their competency.  Mattox v. U. S., supra.

The affidavits, untraversed, establish a state of facts which cast suspicion on the regularity of the verdict, and it should not be permitted to stand.  If the whisky in the bottles which the jurors Grande and Hudson carried from the saloon to their jury room was of the usual standard brand imposed upon the public, it is reasonable to presume that they were under its influence during that day, and while hearing testimony in the case; and, if this presumption is tenable, then two jurors were not in a frame of mind to dispassionately consider and coolly deliberate on the weight and the importance of the testimony.  Their separation afforded opportunities for tampering and improper influences.  The sacredness of trial by jury consists and rests in the conscientiousness of the jurors in applying the facts before them to the law as expounded by the court.  But jurors whose minds are clouded by a too free indulgence of spirituous liquors, and their powers of conception blunted by its effects, are incompetent to appreciate the high responsibilities of their duties.  "When the drink-ing of ardent spirits by a juror is attended with improper conduct, as where a juror separates from his fellows to drink in a barroom, or where ardent spirits are conveyed to him by one of the parties, a new trial will be granted."  Thomp. & M. Jur., sec. 378; Studley v. Hall, 22 Me. 198; Jones v. State, 13 Tex. 168.  In Fairchild v. Snyder, 43 Iowa, 23, a civil case, the

court said: "Where a juror becomes intoxicated on the evening of the day when the trial commenced, but it did not appear that he was intoxicated while in the discharge of his duties as a juror, held, that the court, in the exercise of its discretion, might properly grant a new trial for this reason." In Davis v. State, 35 Ind. 496, the court said: "In a criminal case, after the jury have been charged by the court, and put in care of a bailiff to consider on their verdict, the bailiff went with two of the jurors to a liquor and billiard saloon, where other persons were drinking and playing billiards, and procured for each of the jurors a drink of brandy, ginger, wine, nutmeg, and sugar, which they drank, and one of them paid for it, and it was not shown where the other jurors were at the time said two were absent with the bailiff at the saloon; and the transaction was unexplained, except that the bailiff asked the saloonkeeper, when he called for the drinks, if he could not fix something for the jurors' diarrhea. Held, that this was good cause for setting aside a verdict rendered by said jury against the defendant and granting him a new trial." The conduct of both jurors and bailiffs in this case shows a flagrant disregard of their sworn duties, and the court would have been justified in rewarding them with most severe punishment. If jurors should be permitted to separate, contrary to orders and instructions of the court, go to a barroom, drink intoxicating liquors, and converse and mingle with people generally, then the sacredness and respect for trial by jury would be destroyed, and the practice of excluding juries from outside and external influences and temptations for tampering and bribery is nullified, and no litigant would be protected in his constitutional right of a fair and impartial trial by a jury. The temptation to influence a verdict of a jury is great under all circumstances, and especially so in all criminal cases; and every opportunity to communicate in

any manner whatsoever with the jurors while they are hearing or considering a case should be excluded in so far as it is possible; and a verdict tainted with suspicion by improper conduct of a jury should not be permitted to stand. While it is true in the case at bar that the record does not disclose any prejudice to the defendant as a consequence of the separation and improper conduct charged against the bailiffs and some of the jurors, yet the facts show such a flagrant disregard of their duties that, were the verdict sustained, it might tend to establish a dangerous precedent, and one that might prove harmful to the administration of justice, and a due regard for the rights of trial by jury.

For the foregoing reasons, the judgment of the lower court is reversed, and the defendant is awarded a new trial; and it is so ordered.

SMITH, C. J., and HAMILTON and BANTZ, JJ., concur.