## STATE *v.* BULLARD.

If in the trial of a criminal case, spirits be furnished any of the jurors while deliberating on a verdict, such verdict if against the prisoner will be set aside.

The declarations of one on trial may be given in evidence by the prosecution, and must be given as made if at all; but the jury may judge how much is deserving of credit.

INDICTMENT for stealing a pocket book and sundry bank bills from the store of Richard P. Kent.

Kent testified to the loss of the property, and to other circumstances tending to show that the respondent was in the store about the time of the loss, and that soon afterward he called the respondent and charged him with the larceny. The respondent however declared his innocence, and Kent obtaining no satisfactory information from him, pretended to him that his suspicions were removed, and requested his aid in detecting the rogue and finding the money; that the next evening Bullard came and asked him what he thought of Jewell. Kent replied that he did not think much of him, and asked him if he knew any thing about him. But the defendant did not make much answer and passed out of the village.

Ephraim Cross testified that on the following day he went after Bullard and found him, and when bringing him back, Bullard told him there was one thing which he ought to have told Kent before and had had it upon his tongue's end to do it. And on being asked what it was, he stated that some time ago one Sabbath day on the bridge, he met Jewell who had a ten dollar bill on the Charles River Bank which he offered to sell for four dollars. That upon inquiry whether it was a good bill, Jewell replied that it had been doubted, but if he would take it out of the village he thought it would go well enough. But he wished Bullard to say nothing about it here nor let any one know of it. Bullard further said that he took the bill and hired a horse and gig without telling the owner where he was going, and went to Littleton and there put off the ten dollar bill and purchased some small articles, getting over $9 in other money. That now he had no doubt that Jewell had stolen it from Kent's store; and further said, if Jewell had stolen this he had probably deposited it in the barn or some of the out-buildings where it might be found, as he thought he would not dare carry it into the house. When they arrived in the village, the witness and defendant went and searched in the barn

State v. Bullard.

where Jewell lives, and after looking some time the money was found.

To the conversation between the witness and the defendant concerning the ten dollar bill, the defendant excepted.

After the jury had retired, the attorney-general and the prisoner's counsel agreed in writing that they might ask instructions of the court respecting the law or any evidence given in court; and in pursuance of that consent, the jury made a communication to the presiding justice and received a reply as follows:

Will the honorable court inform the jury in regard to Richard P. Kent's testimony? If so, did Richard P. Kent say he left the prisoner in his store when he left to talk with James M. Rix? Did the court charge the jury that the evidence against the prisoner must be beyond a reasonable doubt, in order to find said prisoner guilty?

HENRY HALL, *Foreman.*

Richard P. Kent testified, that when he left the store he did not know that he left any one in the store; that he stepped near to Rix's door, and watched his door to see if any one went in, and soon saw the defendant go out and across the way.

In order to convict the prisoner, the jury must be satisfied beyond a reasonable doubt upon a view of the whole evidence. It is not necessary that they should have all doubts removed upon every piece and part of the evidence, but upon view of all the evidence that the jury should be satisfied that the prisoner is guilty. All possibility of doubt or possible doubts are not to be removed. But if the jury are so far convinced of his guilt that upon the whole evidence and exercising their sound reason they can say they believe he is guilty, that is they do not doubt but he is guilty, they must convict. But there may be a possibility that he is not guilty, for it is possible in all

State *v.* Bullard.

cases depending on human testimony that the prisoner is not guilty. But all possible doubts are not reasonable doubts.

It also appeared that about eight o'clock in the evening, the foreman of the jury who had retired for the purpose of agreeing upon a verdict, applied to the officer in attendance, who furnished them with meats and drinks, including half a pint of new rum, which was drank by some of the jurors who had complained of being unwell.

The jury returned a verdict against the prisoner, which he for the alleged error in admitting the evidence objected to, and for the supposed irregularities in communicating the written instructions out of court, and in administering ardent spirits to the jurors, moved to set aside.

It was also moved in arrest of judgment, that the indictment contained no sufficient description of the bank bills alleged to have been stolen.

*Young,* for the defendant.

*Wells,* solicitor for the State.

WOODS, J. There can be no doubt that the testimony of Cross narrating the conversation he had with the defendant was competent, it having relation to the money stolen from Kent, with the stealing of which he stood accused at the time. His object was to charge Jewell with the offence, and thereby to shift the suspicion from himself; in doing which he gave a narrative of facts which clearly connected himself with what he averred he had no doubt was a part of the stolen money, and also gave such opinions as to the probable course of Jewell, as to the place of the concealment of the residue of the money, as led to its discovery.

The evidence then consists of the admissions of the

defendant, which if material, and if they concerned the matter in issue or had any tendency to prove the issue, were clearly admissible. No rule of law is more familiar than that which ordinarily allows the admissions of a party to be given in evidence against him in such cases. Nor can there be any doubt that the admission of the facts stated in the course of the conversation were material, as they strongly tended to show the defendant having some connection with one of the bills alleged by him in his belief to have been one of the bills stolen from Kent, and also as tending to show him having some knowledge of the place of concealment, indicating further knowledge than he disclosed, and indicating even such knowledge as might well lead to the conclusion that he himself placed the money where it was found. It was testimony from which the inference might well be made, that the defendant had knowledge beyond what he disclosed touching the larceny, and such as might well attach to himself the commission of it.

The jury were at liberty to credit so much of the defendant's story as they believed. They might reject the whole as false, or regard it in connection with his acts. They might for instance believe so much of it as showed him in possession of the ten dollar bill which he admitted he believed was stolen from Kent, and disbelieve so much as gave an account of the manner in which he obtained that possession. They might also regard the evidence furnished by the fact of his suggesting the probable place of concealment, without regarding as true or sincere the reasons assigned by him for supposing the money to be concealed in the place where it was found. Such is the precise doctrine of *Pearson* v. *Sabin*, 10 N. H. 205. The court say in that case, " It is clear that an admission offered in evidence must go entire to the jury, with all the declarations for and against the party making it; but although the whole is evidence, the jury are not bound to

State *v.* Bullard.

adhere to the admission in all its qualifications and conditions, or to give the same credit as to all the facts embraced in it." The same principle is illustrated in another case lately before us. It was an indictment for' selling liquor without license, in which the evidence of the sale was, that a party applied to the defendant for a glass of spirits, to which he answered that he did not sell such. The party then bought some walnuts and paid a sum of money, and the defendant thereupon said, that he could afford to treat, and delivered the prohibited article to the applicant. It was held by the court, that the jury might consider the application, the payment of money, and the subsequent delivery, as evidence of a sale, notwithstanding words used by the defendant contemporaneously with these acts, tending to show that the article was delivered as a gift. *State* v. *Simons*, Hillsborough. For although the acts and declarations were given in evidence together, the jury were authorized to judge of the credit to be given to the latter, and how far they were to be deemed an artifice to conceal an offence, and to divert attention from the evidence of guilt afforded by the acts of the defendant.

We have therefore no doubt that the evidence was properly admitted.

The written communication from the court to the jury, although transcending somewhat the limits usually observed in such papers so far as it assumed to state what evidence had been offered, was clearly justified by the consent of the prisoner's counsel that the jury might ask instructions " respecting the law or any evidence given in court."

Another exception refers to the refreshments that were provided for the jurors, including some spirits that were ordered for the special use of one or more of their number, who alleged a state of bodily indisposition requiring such application. It does not distinctly appear, but may per-

State v. Bullard.

haps be fairly inferred, that the spirits were drank by the jurors for whose use they were ordered.

In *Purington* v. *Humphreys*, 16 Greenl. 379, where it appeared that such refreshments were furnished the jury who had retired and were somewhat fatigued and exhausted by their labors, the court refused to set aside the verdict on that account, although the practice was censured; and it was said that upon evidence that the use of the stimulants had in any degree operated to disturb the judgment or inflame the passions of a juror, good ground would thereby be furnished for setting aside the verdict.

But other authorities maintain a different view of such a case, and it has been held that the use of such stimulants in any amount, without inquiring how much or to what effect, was a sufficient departure from the proprieties of the juror's office, to require a verdict to be set aside. *People* v. *Douglas*, 4 Cow. 36. There had indeed been other acts of misconduct in the case, but we think that the old law forbidding the use of refreshments at all to jurors deliberating upon a verdict, although relaxed materially from its early severity, has not yet so far yielded as to exempt them wholly from the control of the court in this particular. And we are of the opinion that the use of stimulating liquors by a jury deliberating upon a verdict in a criminal case, without first showing a case requiring such use, and procuring leave of court for that purpose, is a sufficient cause for setting aside a verdict found against the prisoner in such circumstances, whether the use was an intemperate one or otherwise.

For this cause the verdict must be set aside and a new trial granted. The motion in arrest of judgment need not therefore be considered.

*New trial granted.*