# CREEK *v.* THE STATE.

MURDER—SELF-DEFENSE.—On the trial of an indictment for murder in the second degree, the court instructed the jury that no "threatening actions" of the deceased could justify the defendant in taking his life, and, in an other instruction, told them that if the deceased made a violent assault upon the defendant while he was retreating, and the deceased

pursued him, and the defendant had reasonable apprehension of great bodily harm, and had used all reasonable means to keep out of the way, he would be justified in repelling the assault, and if, in so doing, death resulted, he ought to be acquitted.

*Held,* that neither instruction correctly stated the law. The latter was erroneous, because retreat is not always a condition which must precede the exercise of the right of self-defense. Page 153.

MANSLAUGHTER.—In manslaughter, the killing, if upon a sudden heat, must be voluntarily done, and without malice. Page 153.

SELF-DEFENSE.—FEAR OF BODILY HARM.—To justify the killing of another on the ground of fear of great bodily harm, there must be reasonable cause for such fear, and it is not sufficient to show that the defendant was in actual fear. Page 154.

CRIMINAL LAW.—The criminal law, while indulging to a humane extent the mere infirmities of human nature, nevertheless requires of sane men the exercise of a mastery over their fears, as well as their passions.

NEW TRIAL.—SEPARATION OF JURY WITHOUT LEAVE.—*Semble,* that if after the jury have retired to deliberate on their verdict, some of them separate from their fellows, without the leave of the court, and without being attended by an officer, a new trial will not be granted, (unless our statute makes it imperative,) if the verdict is clearly right upon the evidence; but if the correctness of the verdict be doubtful, a new trial must be granted. But in all such cases, the misconduct being established, the burden is upon the prosecution to show that the offending jurors were not influenced adversely to the defendant, or in any respect rendered less capable of discharging their duties. Page 155.

QUÆRE.—Whether the statute (2 G. & H., sec. 142, p. 423,) does not make it imperative on the court to grant a new trial for such cause. Page 155.

GRAND JURY.—INDICTMENT.—To an indictment the defendant pleaded, 1st, that it had been found by the grand jury without evidence; and 2d, that no vote was taken by the grand jury.

*Held,* that the pleas were correctly rejected.

*Held,* also, that the return of a bill into court by the grand jury, duly indorsed by the foreman, is evidence that the proper number have concurred in the finding, which cannot be controverted by plea. Page 156.

APPEAL from the *Fayette* Circuit Court.

FRAZER, J.—This was an indictment for murder in the second degree. There was a conviction for manslaughter.

The court instructed the jury that no "threatening actions" of the deceased could justify the defendant in taking his life. In a separate charge, the court also told the jury, that if the deceased made a violent assault upon the defendant, while he was retreating, and the deceased was pursuing him, and the defendant had reasonable

apprehensions of great bodily harm, and had used all reasonable means to keep out of the way, he would be justifiable in repelling the assault, and if, in so doing, the death of the deceased was produced, the defendant ought to be acquitted.

It is not possible to reconcile these two instructions. In one, the jury was, in effect, told that no threatening actions could have warranted the defendant in taking the life of the deceased; while in the other, they were told that certain menaces would warrant it, provided the defendant had been retreating, and the deceased pursuing him. Even the latter does not give the law accurately. Retreat may be impossible or perilous, and is not, therefore, always a condition which must precede the right of self-defense. The law upon the subject is so accurately laid down in the text books, that it seems to us unnecessary to discuss it further. The first instruction to which we have alluded was given on motion of the prosecuting attorney. It is so very much at variance with all that is settled upon the subject, that we need not prolong this opinion by dwelling upon it.

In the fourth instruction, given by the court upon its own motion, after setting forth an accurate definition of manslaughter, as the statute defines it, it is added, " and if the defendant killed the deceased upon a sudden heat, with an ax, as charged in the indictment, you can find the defendant guilty of manslaughter." This is inaccurate. The killing must have been *voluntarily* done, upon a sudden heat, if without malice, to make it manslaughter.

The defendant moved the court to give sundry instructions to the jury, which were refused; by which the question is raised, whether the actual *fear*, by the defendant, of great bodily harm from the deceased, would be sufficient to excuse the homicide, or whether there must be *reasonable cause* for such fear.

This question is one concerning which much may be said on both sides that is plausible and difficult to answer. It

has been somewhat discussed by judicial tribunals, from time to time, as they have been compelled to pass upon it; and it seems to us that much that has been said upon it is more metaphysical than practical, and that often the theory of existing law has been lost sight of, in the nicety of abstract disquisition. We are not disposed to enter at much length into the subject.

It ought to be borne in mind, that the criminal law holds sane men responsible for the ordinary exercise of their reason. It is a power common alike to cowards and those who know no fear. It is a guide to which both may apply, if they wish to do so. By the power of will, he who is naturally very timid can, and often does, meet danger with as much self-possession as the boldest man, and even his fears beget that caution which is a necessary safeguard against rashness. Of all men, he is probably least likely to commit needless homicide in self-defense, for his unfortunate weakness usually tends to paralyze his arm, and makes him slow to strike, quite as much as it subjects him to the torture of groundless apprehension. Of course, we speak of persons not so unmanned by fear as to be incapable of exercising either judgment or will. A sane man is so constituted that he can be either the master or the slave of his fears, as well as his passions. The criminal law, indulging to a humane extent the mere infirmities of human nature, nevertheless requires the exercise of this mastery. Accordingly the great weight of authority is against the doctrine urged by the appellant's counsel. We believe it has met the approval of the Supreme Court of Tennessee only. *Shorter* v. *The People*, 2 Coms. 197; *Stewart* v. *The State*, 1 Ohio (McCook) 71.

While the jury was deliberating, some of its members, without the leave of the court, or the knowledge or consent of the defendant, and without being attended by an officer, separated from their fellows, went where there were other persons, and drank whisky. It was shown by affidavits that they did not drink to intoxication; that the influence

of liquor was not perceptible upon them, and that during such absence they were subjected to no influences whatever by others, and in no respect attempted to be tampered with.

Does this constitute, of itself, sufficient cause for a new trial? The sum of the modern authorities is, that such conduct on the part of jurors is exceedingly reprehensible, and ought to be visited with punishment by the court below; but that where the verdict appears clearly to be right upon the evidence, a new trial will not be granted, but if the correctness of the verdict be doubtful, then such misconduct will result in a new trial. But in all such cases, the misconduct being established, it will impose upon the prosecution the necessity of removing suspicion, by showing, as was done in this case, that the offending jurors were not influenced adversely to the defendant, or in any respect rendered less capable of discharging their duties. These doctrines seem to us sound and wise, and in the present case, the evidence not being in the record, we could not, for this cause, unless our statute changes the law, reverse the judgment. *The People* v. *Ransom,* 7 Wend. 423; *Smith* v. *Thompson,* 1 Cow. 221; *Burrill* v. *Phillips,* 1 Gall. 360; *The People* v. *Douglass,* 4 Cow. 26; *Com.* v. *Roby,* 12 Pick. 496; *Wilson* v. *Abrahams,* 1 Hill 207; *U. S.* v. *Gibert,* 2 Sumn. 21; *Rowe* v. *The State,* 11 Humph. 491; *Thompson's Case,* 8 *Grat.* 637.

But it is urged that our statute (2 G. & H., § 142, p. 423,) made it imperative on the court below to grant a new trial; the word "may," in the statute, being the equivalent of "must." I am not now prepared to rule against this proposition. Upon this subject, however, we are not all now agreed, and as we are not compelled to pass upon the question in the present case, we do not decide it.

At the proper time, three pleas in abatement were filed: 1st, that the indictment was found by the grand jury without evidence; 2d, that no vote was taken by the grand jury. The third was an embodiment of the first and second. These pleas were set aside by the court. This was right.

Cases are easily imagined where it would be but senseless form to examine witnesses before the grand jury. If for some defect, an indictment for the same offense, returned at that term of the court, had been quashed, it would be strange if the witnesses must be re-examined, before the same grand jury could return another bill. *Stewart* v. *The State, ante,* p. 142. The return of the bill into court by the grand jury, duly indorsed by the foreman, is evidence that the proper number have concurred in the finding, which cannot be controverted by plea.

The judgment is reversed, and the cause remanded for a new trial; defendant to be returned, &c.

*B. F. Claypool, J. M. Wilson* and *J. F. Gardner,* for appellant.

*N. Trusler, J. S. Reid* and *J. Yaryan,* for the State.