CLARE ELWOOD BUCHANAN *v.* STATE OF INDIANA.

[No. 3-675A104. Filed May 27, 1976. Rehearing denied July 7, 1976.]

*A. Martin Katz, Katz & Brenman,* of Merrillville, for appellant.

*Theodore L. Sendak,* Attorney General, *John D. Shuman,* Deputy Attorney General, for appellee.

HOFFMAN, J.—On July 10, 1971, defendant-appellant Clare Elwood Buchanan was charged by affidavit with the offense of rape as defined in IC 1971, 35-13-4-3, Ind.Ann.Stat. § 10-4201 (Burns 1956), which reads, in part, as follows:

"Whoever has carnal knowledge of a woman forcibly against her will, or of a female child under the age of sixteen [16] years; or whoever being over eighteen [18] years of age, has carnal knowledge of a woman, other than his wife, who is insane, epileptic, idiotic, or feeble-minded, he knowing of such condition; or whoever, being over eighteen [18] years of age, has carnal knowledge of a woman who is an inmate of the woman's prison or the Indiana School

for Girls, is guilty of rape, and on conviction shall be imprisoned not less than two [2] years nor more than twenty-one [21] years: Provided, That in cases where the female upon whom the crime is committed is a child under the age of twelve [12] years, the punishment shall be imprisonment for life. [Acts 1941, ch. 148, § 3, p. 447.]"[1]

Following trial before a jury, Buchanan was found guilty as charged, ordered committed to the custody of the Indiana Department of Corrections for a period of not less than two nor more than twenty-one years, and ordered to satisfy costs. Thereafter, his motion to correct errors was overruled and he perfected this appeal.

The first issue to be considered on review is whether appellant's conviction of the offense of rape is supported by sufficient evidence.

When questions concerning the sufficiency of evidence are presented on appeal, this court may consider only that evidence which is most favorable to the State, together with all logical and reasonable inferences which may be drawn therefrom. Further, it is not our function to weigh the evidence or determine the credibility of witnesses. *McAfee v. State* (1973), 259 Ind. 687, 291 N.E.2d 554.

An examination of the evidence most favorable to appellee State of Indiana discloses that Buchanan was, at the time of the alleged offense, the manager of a business enterprise located in the City of Hammond, Indiana, which engaged in the painting of automobiles. The alleged victim had been employed at the same firm for the purpose of "masking the detail" on automobiles and assisting Buchanan in taking inventory. On Sunday, July 4, 1971, Buchanan contacted the victim by telephone and requested that she arrive at work early Monday morning in order to assist him in the taking of inventory. Since the prosecuting witness was not scheduled to begin work until Tuesday, she volunteered to do the work on

---

1. Acts 1941, ch. 148, § 3, p. 447, was later amended by Acts 1974, P.L. 149, § 1, p. 634, which is found at IC 1971, 35-13-4-3 (Burns Code Ed.).

Sunday. Under direct examination, she testified that she arrived at work at approximately 7:00 P.M. and assisted Buchanan for "about an hour." The witness further testified: "I was about to leave to get out to the front from the garage to the front office *** I had to go through a small dark boiler room *** he went ahead of me and he had the keys in his hand; when he got into the boiler room I heard him say come here and just as I got into the room he grabbed me and started kissing me and I thought he [was] making a pass. I started talking and saying don't do this and I'm not that type of girl and everything I could think of and he grabbed me again and he started trembling." Later, she testified: ". . . he grabbed me in a headlock and he had me bent over and he was dragging me over to the car parked in the garage. *** [H]e threw me on the front seat and he had me down by the throat on the front seat." The witness further stated that "there was nothing [she] could do ***" but "made [her] best effort to kick him.", and that Buchanan "squeezed down with all his might" and the victim "blacked for a minute." She then testified: "I thought he was going to kill me and that's when he raped me." The evidence disclosed that Buchanan had removed the victim's slacks and had succeeded in penetration. Buchanan admitted that he had intercourse with the prosecuting witness but claimed that she had consented.

Following the incident, Buchanan permitted the victim to leave the premises. Thereafter, she telephoned a friend, Mary Esther DeLeon, stated that she had been raped, and asked that Miss DeLeon "come over." Under direct examination by the State, Miss DeLeon testified that she observed "squeeze marks" on the victim's neck and noticed that she was "rather upset." The two then "decided to call the police."

Later, on the same evening, the victim was interviewed by Officer Ronald Thomas of the Hammond Police Department. Under direct examination by the State, Thomas testified, on the basis of a report which he and his partner had prepared at the time, that the victim had bruises on her chin.

Appellant contends that the record reflects substantial and overwhelming evidence of probative value in support of his assertion that the act of intercourse was accomplished with the consent of the complainant, and not by means of force or threat of force.

Such an argument amounts, in effect, to a request that this court weigh the evidence and determine the credibility of witnesses. As stated hereinabove, this is not our function. *See, Montgomery* v. *State*, (1967), 249 Ind. 98, 229 N.E.2d 466.

It is to be noted that a conviction for rape may be based solely upon the testimony of the prosecuting witness and victim. *Beard* v. *State* (1975), 262 Ind. 643, 323 N.E. 2d 216; *Lynch* v. *State* (1974), 262 Ind. 360, 316 N.E.2d 372; *Williams* v. *State* (1973), 260 Ind. 543, 297 N.E.2d 805; *Taylor* v. *State* (1972), 257 Ind. 664, 278 N.E.2d 273; *Smith* v. *State* (1971), 255 Ind. 687, 266 N.E. 2d 216; *Grimm* v. *State* (1970), 254 Ind. 150, 258 N.E.2d 407.

In order to sustain a charge of rape, it is incumbent upon the State to demonstrate that the act of intercourse was accomplished against the will of the victim. *Shephard* v. *State* (1946), 224 Ind. 356, 67 N.E.2d 534. However, the degree of resistance required of a victim in an attempt to prevent the sexual act is a question of fact and is to be determined in light of the surrounding circumstances in each individual case. *Ritter* v. *State* (1946), 224 Ind. 426, 67 N.E.2d 530. It has been stated that "the required resistance need not take the form of an actual attempt to escape or to fight off the attacker in every conceivable set of circumstances." *Carroll* v. *State* (1975), 263 Ind. 86, at 87, 324 N.E.2d 809, at 811. Physical resistance is not necessary where prevented or averted by threats and fear. *Beard* v. *State, supra.*

In the present case, the evidence demonstrates that the act was accomplished against the will of the victim. She was "grabbed" upon entering the boiler room, subsequently placed

in a "headlock", and "dragged" to the front seat of an automobile where she was held down "by the throat." As noted previously, the victim testified that there was nothing she could do but nevertheless made her "best effort" to kick her assailant. Buchanan "squeezed down with all his might" and the witness temporarily blacked out. As for fear, she testified: "I thought he was going to kill me ***." The resistance offered by the victim and the conduct of appellant were sufficient to establish that intercourse was accomplished "forcibly against her will."[2] It must be concluded that appellant's conviction of the offense of rape is supported by sufficient evidence.

The final issue presented for review is whether the trial court abused its discretion in denying appellant's motion for a mistrial.

The record reveals that during the progress of the trial certain out-of-court communications between a witness and members of the jury were brought to light. At such time, the court addressed the members of the jury and inquired as to whether any juror had received any communication from any witness in the case. Juror No. 11 and the alternate juror indicated that they had. Thereafter, with the exception of juror No. 11, the jurors were removed from the courtroom. Juror No. 11 then stated that on the previous day State's witness Deloris Kegley had been talking in the washroom and that she was not the only person to have overheard the communication at the time. The other jurors were subsequently interrogated individually and as a group concerning the out-of-court communications. Ultimately, it was revealed that jurors Nos. 2 and 12 had also personally overheard communications by Mrs. Kegley in the washroom and that other jurors had discussed such communications among themselves.

Deloris Kegley had testified earlier during the trial that she had been living with Buchanan in the relationship of man and wife for two years "under common law in the State of

---

2. *See,* IC 1971, 35-13-4-3, Ind.Ann.Stat. § 10-4201 (Burns 1956).

Illinois", that she had previously been engaged to appellant, and that they had been separated during the week prior to July 4, 1971. She was called to testify on behalf of the State apparently in the hope that she would furnish evidence of incriminating statements made by appellant following the incident which occurred on July 4, 1971. From the record, however, it does not appear that the prosecution accomplished its purpose in placing her on the witness stand. Moreover, we have not herein noted her testimony for the reason that it added little, if anything, in furtherance of the State's case.

In regard to statements made by Mrs. Kegley in the washroom on the previous day, the alternate juror testified that Mrs. Kegley told her that the incident occurred where "they had both worked", that she was "broken up", that the defendant was "having his fling", and that "the girl decided to yell [r]ape and that wasn't what it really was. . . ." Further the alternate juror indicated that Mrs. Kegley "was setting an impression and she said that he was almost the most gentle man that she had ever known."

When re-examined by the court, juror No. 11 recounted that Mrs. Kegley had addressed her remarks generally to everyone in the washroom and had stated: "[H]e is really a nice guy and he wouldn't do something like that", and had further indicated "something about . . . how close friends they were."

Juror No. 12 recalled the Deloris Kegley was present "one* week ago" when several members of the panel were present for jury call and that she was arguing with the bailiff concerning "when a case was supposed to come up when a deposition was supposed to come up or be made."

All of the jurors individually affirmed that the communications by Mrs. Kegley would not influence their decision in arriving at a verdict.

When the examination of the members of the jury had been completed, the defense moved for a mistrial. Such motion was, however, overruled by the trial court.

In *Oldham* v. *State* (1967), 249 Ind. 301, at 304-305, 231 N.E.2d 791, at 793, our Supreme Court, confronted with a similar question, stated:

"Appellants rely on the proposition that when a juror solicits conversation from a witness it is of itself prejudicial and thereby reversible. The authorities cited are *Hutchins* v. *State* (1894), 140 Ind. 78, 39 N.E. 243, and *Woods* v. *State* (1954), 233 Ind. 320, 119 N.E.2d 558. *Hutchins* dealt with a situation where the deputy prosecutor offered kindness and sympathy to a juror at a time which might cause sentiments of gratitude towards the prosecutor. In *Woods* police officers, who were witnesses for the State, and the sheriff visited with members of the jury during intermissions and recesses.

\* \* \*

"*It is well settled that misconduct of the jury does not require reversal of a conviction unless it results in prejudice to the defendant. Williams* v. *State* (1923), 193 Ind. 670, 139 N.E. 657; *Trombley* v. *State, supra* [(1906), 167 Ind. 231, 78 N.E. 976.] In *Hutchins, supra,* there could be little doubt as to the possible prejudicial effect of the communication. It has been held that the presumption of prejudice as stated in *Woods, supra,* may be rebutted by counter-affidavits of the State, *Myers* v. *State* (1960), 240 Ind. 641, 168 N.E.2d 220. While we held in the *Woods* case that the conduct of the witnesses in visiting with the jury in a room set apart for them was prima facie prejudicial to appelalnt, in the instant case such prima facie presumption, *if any,* is overcome by the counter affidavits produced by the State." (Emphasis supplied.)

In the case at bar, a presumption of prejudice arose when the occurrence of communications between Mrs. Kegley and members of the jury was first brought to light. Such presumption was, however, overcome by the subsequent testimony of the jurors. The statements which were attributed to Mrs. Kegley prior to the trial were unrelated to the evidence in the case, did not reflect in any way upon the defendant, and were not directed to any of the prospective jurors. As for the statements attributed to Mrs. Kegley in the washroom, none can be considered to have been prejudicial to the interests of the defendant. Indeed, the statements were either of a

neutral character or favorable to the defendant. When questioned separately as to whether their decision would be influenced in any manner by the communications, all of the jurors replied in the negative. Upon the foregoing, it must be concluded that the trial court did not abuse its discretion in overruling appellant's motion for a mistrial.

No reversible error having been demonstrated, the judgment of conviction appealed from must be affirmed.

Affirmed.

Garrard, J., concurs with opinion; Staton, P.J., concurs in result with opinion.

CONCURRING OPINION

GARRARD, J.—While I agree generally with the majority analysis, it should be pointed out that prejudice may sometimes be aroused in an unintended fashion. We do not mean to imply that the comments made by the witness in the washroom could not be prejudicial solely because their content favored appellant's cause. The point is that the court properly and adequately investigated the matter. On the basis of that investigation, he concluded that a mistrial was not necessary. He did not abuse his discretion in making that determination.

Accordingly, I concur.

OPINION CONCURRING IN RESULT

STATON, P.J.—Neutral or favorable statements by a witness within the hearing of jury members in a washroom can have a prejudicial effect. The content of the statement has nothing to do with the implicit impressions perceived by the jury members. I concur in result since no prejudice has been shown. The defendant is not entitled to a perfect trial—only a fair trial.

NOTE.—Reported at 348 N.E.2d 70.