Susan SCHULTZ, as Administratrix of the Estate of Harold R. Schultz, Deceased, and Welsh Bros. Motor Service, Defendants-Appellants,

v.

Ray VALLE, Plaintiff-Appellee.

No. 3–783A229.

Court of Appeals of Indiana, Third District.

June 12, 1984.

Rehearing Denied Aug. 21, 1984.

Fred M. Stults, Jr., Fred M. Stults III, Robert P. Forszt, Stults, Custer, Kutansky & McClean, Gary, for defendants-appellants.

Michael F. Yudt, Yudt & Yudt, Merrillville, for plaintiff-appellee.

GARRARD, Judge.

Susan Schultz, as administratrix of the estate of Harold R. Schultz (Schultz) and Welsh Bros. Motor Service (Welsh Bros.) appeal from an adverse judgment entered upon a jury verdict awarding $85,000 to Ray Valle. Valle's complaint arose out of an accident involving Valle's motorcycle and a tractor-trailer operated by Harold Schultz for his employer, Welsh Bros.[1]

Schultz and Welsh Bros. raise four issues on appeal.

I. Whether the fact that several jurors consumed alcoholic beverages at a supper break taken after they had begun deliberations and before they had reached a verdict denied Schultz and Welsh Bros. a fair trial.

II. Whether the court erred by refusing to read to the jury the defendant's final instruction No. 2.

III. Whether the court erred by refusing to read to the jury all of defendant's final instruction No. 3.

IV. Whether the court erred by limiting the testimony of Mary Ann Butler, the Supervisor of Records for Valle's employer, as to reasons for Valle's absenteeism.

I. *Consumption of alcoholic beverages by jurors.*

The trial of this cause began on March 28, 1983. By 3:30 p.m. on March 30, 1983, the parties had made their closing arguments, the judge had read the final instructions and the jury had begun its deliberations.

At approximately 7:30 p.m., the jurors broke from their deliberations to have supper at the Old Style Inn under the supervision of the bailiff, Carol Leveritt. The jurors resumed their deliberations in the jury room after supper at approximately 9:00 p.m. They returned the verdict in favor of Valle at approximately 12:15 a.m. the following morning. The court entered judgment and discharged the jury.

On April 4, 1983, Robert P. Forszt, co-counsel for Schultz and Welsh Bros., began a partial canvas of the jury by contacting juror Karen Zorick by telephone. While speaking with Zorick, Forszt learned that before supper on March 30, the bailiff had advised the jurors of a court policy permitting jurors to have up to two alcoholic beverages with their evening meal. Zorick had consumed a wine spritzer with her supper and Forszt confirmed in subsequent telephone conversations that several other jurors had consumed varying quantities of alcohol at the meal.

Schultz and Welsh Bros. sought to depose various people to determine the extent of the jurors' alcoholic consumption but the court quashed the subpoenas. Schultz and Welsh Bros. then sought an evidentiary hearing at which all jurors would be available for testimony. Said hearing was held on May 24, 1983. At the hearing Leveritt, the bailiff, testified that the court had told her she could allow the jurors to consume alcoholic beverages at supper but "that they are not to have more than two and they're not to have anything with straight liquor." Record at 49, lines 5–14. She said further that none of the jurors ever appeared intoxicated after supper or complained that another juror appeared intoxicated. Record at 50, lines 4–23. Mr. Schmidt, the foreman, testified that none of the jurors were intoxicated or under the influence of alcoholic beverages during the deliberations. Record at 55, lines 18–23.

The testimony revealed that seven jurors consumed alcoholic beverages before or during their meal. Two jurors consumed two beers each, two consumed three beers each, one had two glasses of Scotch and water, one had a wine spritzer and one had a "highball." Record at 54, lines 3–11.

---

1. Harold Schultz died after the filing of the complaint and his estate was substituted as a party defendant.

As the judge was preparing to discharge the jurors from the hearing, the following dialogue took place between the court and one of the jurors:

"THE COURT: Yes, sir?

MR. PEARSON: I would like to add I think having the drinks we did helped more than anything. There was a lot of tension starting to build up during the time we were there. I don't know if it was coming back from the meal or the walk but—

THE COURT: An hour and a half break and a full stomach makes a difference.

MR. PEARSON: Seems like we were getting at each other's throat.

THE COURT: You were due for a break maybe."

Record at 61, lines 8–20.

Schultz and Welsh Bros. filed their motion to correct errors on May 27, 1983, alleging those errors that are now asserted on appeal. Among the relief sought was a new trial. The court denied the motion to correct errors on June 27, 1983.

It is perhaps a blessing that no court of this state since the late nineteenth century has had to consider the treatment to be given a verdict rendered by a jury composed of one or more members who had consumed alcoholic beverages during the course of their duties.[2] Only in *Davis v. State* (1871), 35 Ind. 496, were the facts similar to those of the present case where an officer of the court expressly permitted the drinking by the jurors after deliberations had begun. In *Davis*, the defendant was found guilty of murder and sentenced to hang. After final instructions had been given, the bailiff and two jurors separated from the other jurors and went to a saloon for a drink. The Supreme Court was not certain how much the jurors drank or what effect the drinking may have had on their judgment. The court, in reversing and remanding for a new trial, said:

"If misbehavior, such as that shown by the affidavits, and which is without attempted palliation or justification, should not be regarded as sufficient to set aside the verdict, it would be a stigma upon the law and a disgrace to the courts. We do not mean to say that the court should enter upon the question as to how far such conduct was or was not excusable or innocuous. It will be time to decide that question when it shall come up. In this case it does not arise. We concede that on this point the authorities are not uniform. But as to the sufficiency of such misbehavior unexplained, to set aside the verdict, the authorities are abundant and satisfactory."

*Davis*, 35 Ind. at 499–500. The court cited cases from two other jurisdictions, *The State v. Bullard* (1844), 16 N.H. 139; and *Gregg v. McDaniel* (1846), 4 Harring.Del. 367 supporting the propriety of granting a new trial after the discovery of consumption by jurors of alcoholic beverages during deliberations and without proper cause.

One other Indiana case involved the use of alcoholic beverages during deliberations but without the complicity of any officer of the court. In *Creek v. State* (1865), 24 Ind. 151 the jury found the defendant guilty of manslaughter. The Supreme Court recognized the reprehensibility of such conduct but refused to grant a new trial because the verdict appeared to be clearly correct and the prosecution had shown that the alcohol had had no adverse effect on the capability of the jurors.

The two other Indiana cases relevant here involved drinking by jurors prior to deliberations. In *Pratt v. State* (1877), 56 Ind. 179 one juror was found to have consumed a glass of whiskey during one or two of the adjournments in the week-long trial. In *Carter v. The Ford Plate Glass Company* (1882), 85 Ind. 180, a juror drank

---

**2.** In *Hatfield v. State* (1962), 243 Ind. 279, 183 N.E.2d 198 our Supreme Court did consider the use of prescribed tranquilizers by a juror during the course of a trial and found this use to be insufficient to warrant a new trial. The court distinguished *Hatfield* from cases involving the use of intoxicating liquor or drugs by jurors at their own personal discretion and it considered uncontradicted medical testimony that the drugs did not impair the juror's mental faculties.

one beer during a recess. The court held in each case that proof of the consumption of alcohol alone was insufficient to warrant the grant of a new trial.

In *Brown v. State* (1894), 137 Ind. 240, 36 N.E. 1108, the defendant was found guilty of murder and sentenced to die. During the four-day trial jurors were permitted to separate during adjournments. After the second day of trial one juror became intoxicated for a two-hour period. The court, in ordering that a new trial be granted, said:

> "It seems to be well settled in this State, as well as in other jurisdictions, that drinking intoxicating liquor during the recess of the court is not such misconduct of the jury as vitiates the verdict, unless the drinking is to such an extent as to produce intoxication; but where a juror drinks to such an extent as to become intoxicated, such conduct renders the verdict invalid, and the court, upon proof of such misconduct, should set it aside and grant a new trial."

*Brown*, 36 N.E.2d at 1108. (citations omitted) Though the juror did not appear intoxicated the following morning when the trial resumed, the court expressed its belief that the defendant "was entitled to have this juror consider and pass upon his case with faculties unimpaired by drunkenness during the progress of the trial." *Id.* at 1109.

■ We are here faced with a set of facts not previously addressed in the State of Indiana but we believe the rule we apply today follows from the law enunciated by our Supreme Court in the early cases, particularly *Davis v. State* (1871), 35 Ind. 496. What makes this case unique is the existence of a policy of the trial court permitting the consumption of alcoholic beverages by jurors during an evening meal after deliberations have begun. The trial court's complicity here, however, is not a factor as we hold a verdict is invalid *per se* if rendered by a jury which has consumed alcoholic beverages after deliberations have begun.[3]

This *per se* rule is necessary because of the impracticality of trying to determine how much a juror may have been influenced by the consumption of alcoholic beverages. The effect of alcohol on a juror's will cannot be as easily quantified, discounted or discovered as, for example, the effect of a possibly prejudicial magazine which was found in the jury room, *Fox v. State* (1984), Ind., 457 N.E.2d 1088; or the effect of an intimidating phone call to a juror, *Rodriguez v. State* (1979), 270 Ind. 613, 388 N.E.2d 493; or the effect of communications between a witness and several jurors, *Buchanan v. State* (1976), 169 Ind. App. 287, 348 N.E.2d 70.

We are not so naive as to think that any amount of alcohol will necessarily render a person incapable of rational thought. But we are unwilling to establish a rule that will require an independent examination of each "tainted" juror to determine his or her general susceptibility to alcohol and then to speculate as to the effect the particular quantity of alcohol consumed may or may not have had on the juror's judgment. The court in *Davis* cited with approval the case of *Ryan v. Harrow* (1869), 27 Iowa 494 where the Iowa Supreme Court refused to enter into an inquiry as to the possible extent to which a juror may have become influenced by alcohol, saying:

> "The view we take of the case will relieve us of the duty of determining whether the charge of intoxication is sustained by the record. And we are glad to escape so unpleasant an investigation, which might result in convincing us that the administration of the law in our State has been disgraced by the drunkenness of those appointed to decide, in a court of justice, upon the rights of their fellow-citizens."

*Davis*, 35 Ind. at 500; *Ryan*, 27 Iowa at 495. The court in *Ryan* continued:

> "Doubtless ardent spirits, to a certain amount, may be drank without inflaming the passions or beclouding the reason, but, beyond a certain limit, they indisputably produce these results. Where that

---

3. "Alcoholic beverage" is defined at IC 7.1–1–3–5.

limit is with different men cannot be certainly known.

Courts will not assume to determine the limit, and whether, in cases where jurors have indulged in the use of the dangerous liquid, it has been passed. Inasmuch as, in such a case, there can be no certainty of the purity and correctness of the verdict, that it is the result of cool and dispassionate deliberation and the honest exercise of reason, it will be set aside. In the business affairs of the country these very reasons often constrain those who employ men to discharge duties requiring coolness, deliberation and the calm exercise of judgment for their performance with safety to life and property, to impose strict abstinence from intoxicating beverages upon those so employed. Engineers upon railroad locomotives, pilots upon steamboats, etc., etc., are often the subjects of such restrictions, not because indulgence in intoxicating liquors, within the very indefinite bounds of what is called moderation, would absolutely unfit them for the careful discharge of their duties, but because there is absolute certainty of perfect safety from the maddening influence of alcohol in entire abstinence from the use of all the liquors in which it exists, and without such abstinence there can be no such safety."

*Ryan*, 27 Iowa at 500–01. *See also Jones v. State* (1854), 13 Texas 168 ("Every day's experience must satisfy us that it is impossible to lay down a rule as to how much can be drank without impairing the qualification of a juror for discharging the trust confided in him ... [T]he only safe rule is to exclude [alcohol] entirely.")

The *Ryan* court's severe depiction of alcohol and its effects should not be dismissed as merely the words of a bygone generation. The ill effects of alcohol on our society today hardly need be discussed. Neither need we discuss the decay of the public's perception of our modern day institutions, including the court system. Faith in our courts and our system of justice can hardly be fostered by a court policy allowing jurors to consume alcohol while deciding the fate of a fellow human being. Neither can we expect anyone to respect a judgment entered on a verdict cast in doubt by questions as to the possible effect of alcohol on a particular juror's resolve. The problem is highlighted by Mr. Pearson's comments to the court indicating that the drinks consumed at the Old Style Inn had the effect of easing the tension in the jury room thus allowing the jurors to more easily unanimously agree on a verdict. The implication that the alcohol contributed to swaying the minds of the recalcitrant jurors is too strong to ignore.

It is true that some jurisdictions have not granted a new trial where the juror's consumption of alcohol after the deliberations had begun did not result in intoxication or where the drinking was with a meal, *see* Use of Intoxicating Liquor by Jurors: Civil Cases, Ann., 6 A.L.R.3d 934, Sections 10, 11, pp. 946–48, but we believe the strict rule enunciated above to be the product of the most well-reasoned cases. With the application of this strict rule we are hopeful that this issue will not require discussion in Indiana courts for at least another century.

█ Because we reverse the trial court on the first issue presented on appeal, we decline discussion of the other errors raised. *Aldon Builders, Inc. v. Kurland* (1972), 152 Ind.App. 570, 284 N.E.2d 826.

Reversed and remanded with instructions to grant a new trial.

STATON, P.J., concurs.

HOFFMAN, J., dissents and files separate opinion.

HOFFMAN, Judge, dissenting.

I respectfully dissent. While the majority's strict position may be theoretically admirable, it comes up somewhat lacking when instituted within reality. Since Indiana courts have not clearly spoken on the subject, I believe that adoption of a rule set forth in another line of cases is more appropriate. "[T]he rule prevailing in most jurisdictions is that the drinking of intoxicating

liquor by a juror or jurors is not sufficient, of itself, to vitiate the verdict; that to have such vitiating effect, so as to warrant or require the granting of a new trial, it must appear that the drinking resulted in some degree of intoxication or inebriation." 6 ALR3d 934 Jury—Use of Liquor—Civil Cases § 7 (1966) and the cases cited therein.

The court policy in this case did not force any of the jurors to drink, it merely limited the drinking with their meal to a reasonable amount. It allowed the jurors to act in a manner that was normal for them. In fact, it could be argued that prohibiting alcoholic beverages with meals could have just as great an impact or even more of an impact on the verdict than allowing them. One juror testified that he always had two beers with his evening meal. To be required to forego those two daily beers may have had an effect on him, particularly if the trial had been one resulting in lengthy deliberations. Adoption of such a rule merely allows jurors the opportunity to act as naturally as is practicable in a very unnatural situation.

The question also comes to mind of what action would have been necessary had there been no court policy and the jurors had ordered alcoholic beverages on their own initiative? Would there then need to be a voir dire of the jury to see who had a drink? We seem to be toying with a possible ex post facto situation here.

Were any of the jurors questioned regarding what medications they were using or if they happened to have a headache that day? Maybe someone drank too many cups of coffee with dinner and was unusually stimulated. It could be argued that all such factors might affect deliberations. However, such things are considered irrelevant unless they exist in the extreme. So too should the rule be regarding the consumption of alcoholic beverages with meals.

Day after day judges and jurors are called upon to determine whether individuals are intoxicated. If we consider them capable of making that determination in life and death situations, it only seems reasonable that we should afford them the same authority in deciding whether a juror has consumed alcohol to the point it affects his ability to deliberate effectively. Generally, the granting or denial of a new trial on the ground of alleged juror misconduct rests within the discretion of the trial court, and that decision will not be interfered with on appeal absent a showing of abuse of such discretion. *Roose v. Roose et al.*, (1896) 145 Ind. 162, 44 N.E. 1. I see no reason to stray from that general principle in this situation.

The case of record which perhaps most closely parallels the one now before us is *Kealoha v. Tanaka*, (1962) 45 Haw. 457, 370 P.2d 468. *Kealoha* was a wrongful death action arising out of a collision between an automobile and a motorcyclist which resulted in a judgment in favor of the defendant. The plaintiff filed a motion for a new trial on several grounds, one of which was that consumption of intoxicating liquor by some of the jurors during the dinner recess after submission of the case to the jury, constituted prejudicial conduct as a matter of law. The Supreme Court of Hawaii reiterated its adoption of the "modern" view in citing *Territory v. Ferris*, (1903) 15 Haw. 139, at 149:

> " 'The material inquiry in such cases is whether the defendant was prejudiced thereby, in other words, whether the use was such as to affect the mind of any of the jurors and thus deprive the defendant of the benefit of the condition of mind of each and all of the jurors to which he is entitled; and if it appears that the defendant was not prejudiced, the verdict can not be reversed.'

> ❖  ✳  ❖  ✳  ✳  ❖

> "[W]hile the use of intoxicating liquor during a trial '. . . is deserving of severe censure and condemnation, such use is not of itself, where the liquor is not furnished by one of the parties to the cause, necessarily a ground for the granting of a new trial.' "

The *Kealoha* court also cited a Colorado case for support:

" 'It must be borne in mind that the question we are to deal with has nothing to do with the moral or social questions involved in the use of intoxicating liquors. If a verdict is to be set aside for misconduct of the jury, it must be for legal reasons alone. If by such misconduct a party litigant, or, in a criminal case, a party on trial, has been prejudiced, the verdict should be set aside, for the law requires a fair and impartial verdict. If the justness, soundness or fairness of the verdict has been impaired, or in any way vitiated, by the use of liquors by the jury, such verdict should be set aside. But if no such consequences be shown, or are fairly inferable, if no juror was intoxicated, or in any manner or degree affected in his deliberations or judgment, for what reason in such case is the verdict to be set aside? How has the party on trial in such case been prejudiced or injured by the conduct or misconduct of the jury? The real question in the case is, has the party to be affected by the verdict been prejudiced by the conduct or misconduct of the jury?' " *Jones v. People,* (1882) 6 Colo. 452, at 461–462.

The *Jones* court had the following answer to the argument that the only safety lies in the rigid rule of setting aside the verdict in every case where intoxicating liquors are used by the jury, regardless of whether the jury was affected by such use:

" 'Would such a rule prevent a repetition of like misconduct by future juries? We say no. And instead of safety, there is manifest danger in the rule, for it would hold out an obvious temptation, and furnish an almost certain opportunity to secure a new trial in every case, by the surreptitious introduction of liquor into a jury room....' *Jones v. People, supra* at 462–462. Accord, *Dolan v. State,* 40 Ark. 454, 475."

The Federal Courts also appear to take the position I am proposing. In *United States v. Taliaferro,* (1977) 558 F.2d 724, at 726, the United States Court of Appeals, Fourth Circuit stated:

"Although we look with disfavor on the practice of allowing jurors to have alcoholic beverages during their deliberations, the mere fact that they were so allowed in this case does not require a new trial. The defendant must show that he was prejudiced—*i.e.,* that a juror became intoxicated so that he or she was affected in the performance of his or her duties. *Faith v. Neely,* 41 F.R.D. 361, 366 (N.D.W.Va.1966); *Kealoha v. Tanaka,* 45 Haw. 457, 370 P.2d 468 (1962); *People v. Crooker,* 47 Cal.2d 348, 303 P.2d 753 (1956), *aff'd,* 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958). Taliaferro has made no showing of prejudice, and the District Judge found that none existed, following an evidentiary hearing held in connection with Taliaferro's motion for a new trial. The fact that ten jurors each had one drink is not in itself a sufficient showing of prejudice. Moreover, the Marshal testified that when he accompanied the jurors back to the Courthouse after their dinner, none of them appeared intoxicated."

The only evidence in this case regarding the effect of the dinner drinks was affidavits by two doctors containing opinions to the effect that consumption of alcohol *may* have an effect on the deliberations. There is no evidence that it *did* affect *these* jurors. In fact, the testimony of the bailiff and the response, or lack thereof, by the jurors to the trial court's questions regarding whether any juror was under the influence of alcohol to the extent it affected deliberations, demonstrated that no one felt the jury's deliberations and verdict were affected by the dinner drinks. Therefore, the appellants were not prejudiced.

The majority points to the statement made by one juror that, "I would like to add I think having the drinks we did helped more than anything. There was a lot of tension starting to build up during the time we were there. I don't know if it was coming back from the meal or the walk but—." The trial court pointed out that an

hour and a half break and a full stomach may have made a difference. The juror even admitted that the meal or the walk may have been what broke the tension. Therefore, this statement is not sufficient evidence to support a finding that the appellants were prejudiced by the dinner drinks.

It can also be argued that it is not within the province of this Court to proscribe behavior. Such action can only be taken by the Legislature through enactment of statutes or the Supreme Court of Indiana through the promulgation of court rules. An example of this was pointed out by the appellants in their brief when they noted that IND.CODE § 7.1–5–10–1(a)(3) makes it unlawful to sell alcoholic beverages on election days from 3:00 A.M. until the polls are closed.[1] No similar law exists for jury duty.

I would not suggest that a trial court should permit a verdict which is not the deliberate judgment of the jurors. However, with the habit of drinking so prevalent as it unfortunately is, to hold that, if a juror should drink a single drink of liquor, the verdict thereafter rendered must be set aside, would be both dangerous and unnecessary. The consumption of liquor is not illegal, and we have no control over its use, unless it is shown that such use has led to a miscarriage of justice. Like it or not, we live in a society where the drinking of alcoholic beverages is a common practice. I believe this Court would be better serving the public by adopting a rule in tune with our society.

In the instant case, no miscarriage of justice occurred, no prejudice to the appellants was demonstrated by the record, and the trial court did not abuse its discretion. Therefore, I would apply the "modern" rule and affirm the judgment.

---

**1.** Of course, even IND.CODE § 7.1–5–10–1(a)(3) does not prohibit the *drinking* of alcoholic beverages during this time.